**Lawrence HURRLE, et al., Relators,**

v.

**COUNTY OF SHERBURNE, by its BOARD OF COMMISSIONERS, Respondent.**

No. CX–98–1630.

Court of Appeals of Minnesota.

June 1, 1999.

Jeffrey R. Blease, Sarah M. Anderson, Blease Law Firm, St. Cloud, for relators.

Bradley J. Gunn, Leonard, Street & Deinard, P.A., Minneapolis, for relators.

Walter M. Kaminsky, Sherburne County Attorney, Kathleen A. Heaney, Assistant County Attorney, Elk River, for respondent.

Jack Y. Perry, Susan E. Ryan, Briggs & Morgan, P.A., Minneapolis, for respondent.

Considered and decided by WILLIS, Presiding Judge, LANSING, Judge, and SCHUMACHER, Judge.

## OPINION

LANSING, Judge.

On writ of certiorari, Sherburne County landowners appeal the county board's denial of their preliminary plat application. The board based its denial on a finding that water quality and quantity issues had not been resolved. The record neither supports this finding nor the written findings adopted at a later meeting, and we reverse and remand.

## FACTS

The property involved in this appeal is a 64–acre tract in Sherburne County proposed to be developed as Prairie Woods Estates Fifth Addition. The tract is an open field surrounded by single-family homes and lots previously developed as Prairie Woods Estates Additions One through Four. Landowners Lawrence, Carol, Francis, and Marilyn Hurrle filed their preliminary plat application with the Sherburne County Planning Commission in 1996. The Hurrles' application incorporated a groundwater study concluding that the water supply was sufficient and that "ground water quality has shown no degradation in the area," but that the ground-water was at risk of nitrate pollution. The commission recommended the application be denied because of water quality and quantity concerns. At the Hurrles' request, the Sherburne County Board tabled its review of the application.

In 1998 the commission reconsidered the application and found that the "water quality and quantity issues have not been resolved." The commission again recommended the board deny the application. The board deferred consideration for 60 days to allow the county staff to review the application.

The board considered the application on July 7, 1998. It heard comments from four residents. Meeting minutes show the board voted to deny the application because the "[o]ngoing water quality and quantity issues have not been resolved." The board did not record the meeting or provide any additional notes relating to the denial.

Two weeks later, on July 21, 1998, the board voted to "[a]dopt the Findings of Fact to support the decision to deny the plat of 'Prairie Woods Estates Fifth Addition,' as presented by the Zoning Department." In addition to its earlier finding that the water quality and quantity issues had not been resolved, the board found (1) the Hurrles did not have legal title to the property as of July 7; (2) the Hurrles'

involvement in a bankruptcy case made action uncertain; (3) the application did not satisfy the surface-water drainage requirements in the county's floodplain ordinance; and (4) the Hurrles' proposed solution of providing wells was questionable.

The Hurrles challenge the reasons given at the July 7 meeting as unreasonable and unsupported by the facts; they also challenge the four grounds given at the July 21 meeting as untimely, misleading, and without merit.

## ISSUES

I. Are the board's July 21 findings contemporaneous?

II. Is the board's denial of the preliminary plat application unreasonable, arbitrary, or capricious?

## ANALYSIS

The denial or approval of a preliminary plat application is a quasi-judicial administrative decision that we review to determine whether the decision is unreasonable, arbitrary, or capricious. *National Capital Corp. v. Village of Inver Grove Heights*, 301 Minn. 335, 336–37, 222 N.W.2d 550, 551–52 (1974) (per curiam); *Good Value Homes, Inc. v. City of Eagan*, 410 N.W.2d 345, 348 (Minn.App.1987). When an agency performs the quasi-judicial function of receiving and weighing evidence, making factual findings, and applying a prescribed standard to reach a conclusion, a reviewing court applies the "substantial-evidence test." *Meath v. Harmful Substance Compensation Bd.*, 550 N.W.2d 275, 280 (Minn.1996) (Anderson, J., concurring specially); *see also Town of Grant v. Washington County*, 319 N.W.2d 713, 717 (Minn.1982); *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981) (greater scrutiny examines "whether the evidence provides a substantial basis for the decision."); *State by the Rochester Ass'n of Neighborhoods v. City of Rochester*, 268 N.W.2d 885, 888 (Minn.1978) (greater scrutiny required en-

tity to support findings with "substantial evidence").

## I

The starting point for our review is "the proceedings before the decision-making body." *Carl Bolander & Sons Co. v. City of Minneapolis*, 502 N.W.2d 203, 207 (Minn.1993). An entity "need not necessarily prepare formal findings of fact, but it must, at a minimum, have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion." *Honn*, 313 N.W.2d at 416. In evaluating the reasons, we look at the contemporaneous record made by the entity. *Metro 500, Inc. v. City of Brooklyn Park*, 297 Minn. 294, 300, 211 N.W.2d 358, 362 (1973). The parties dispute, however, what is meant by "contemporaneous."

Contemporaneous findings have generally been limited to findings adopted by the entity during the meeting at which the decision is made. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988) (describing as "contemporaneous" written findings adopted by city council at meeting when it denied plat application); *Main Realty, Inc. v. Pagel*, 296 Minn. 362, 366, 208 N.W.2d 758, 760 (1973) (per curiam) ("We are not impressed by the vague references in the council minutes * * * as justification for denying the permit without an articulation by the council of the factual basis and reasons for that determination."); *see also Communications Properties, Inc. v. County of Steele*, 506 N.W.2d 670, 672 (Minn.App.1993) ("no contemporaneous findings" made by county board at meeting when it denied rezoning request); *Kehr v. City of Roseville*, 426 N.W.2d 233, 237 (Minn.App.1988) (indicating absence of findings by city council at meeting when it denied rezoning request was a failure "to provide contemporaneous findings"), *review denied* (Minn. Sept. 16, 1988). In a limited number of cases, this court has extended the concept of "contemporaneous" to include later findings. *R.A. Putnam & Assocs., Inc. v. City of*

*Mendota Heights*, 510 N.W.2d 264, 267 (Minn.App.1994) (holding that findings adopted 14 days after decision by city council were contemporaneous), *review denied* (Minn. Mar. 15, 1994); *BBY Investors v. City of Maplewood*, 467 N.W.2d 631, 635 (Minn.App.1991) (findings adopted by city council 26 days after decision by city council were contemporaneous), *review denied* (Minn. May 23, 1991).

The purpose for requiring that findings be contemporaneous is to prevent the decision-making entity from later providing reasons that are "completely unconnected with the actual basis for the denial." *Metro 500*, 297 Minn. at 300, 211 N.W.2d at 362. The better the record of the meeting kept by the entity, the less probability that the entity will engage in *post hoc* justification. If the decision-making meeting is recorded, that record can provide a basis for the adoption of findings at a later meeting. *See R.A. Putnam & Assocs.*, 510 N.W.2d at 267 (city council "videotaped its hearings * * * and transcribed the council meetings at which the reasons for the denial were discussed"). The recording can also be used to demonstrate the genesis of factfinding when the entity directs staff to prepare written or formal findings that are adopted at a later meeting. *BBY Investors*, 467 N.W.2d at 633 (city council recorded hearing and motion directing city staff to draft findings).

The Sherburne County Board did not electronically or manually record either its July 7 or July 21 meetings. The July 7 minutes reflect only the finding that the "[o]ngoing water quality and quantity issues have not been resolved." The minutes do not indicate that the board directed the staff to prepare findings for adoption. The board asserts that its adoption of the findings before the Hurrles' litigation weighs in favor of a determination that its July 21 findings were contemporaneous. The timing may demonstrate the genuineness of the findings, but absent a record of the meeting, we are unable to determine what connection, if any, the la-

ter-adopted justifications have to the decision reached at the July 7 meeting. *Honn*, 313 N.W.2d at 416 (by failing to make a full or verbatim record of the meeting, an entity "runs the risk of not having its decision sustained").

## II

To determine whether a governmental entity's decision was unreasonable or arbitrary and capricious, we look to the controlling ordinance. *White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn. 1982); *Honn*, 313 N.W.2d at 417. Reasonableness is measured by "the legal sufficiency of and factual basis for the reasons given." *Swanson*, 421 N.W.2d at 313. If an entity's zoning ordinances specify "standards to which a proposed plat must conform, it is arbitrary as a matter of law to deny approval of a plat which complies in all respects" with the ordinances. *National Capital Corp.*, 301 Minn. at 337, 222 N.W.2d at 552.

Sherburne County has adopted both a zoning ordinance and a subdivision ordinance. The board denied the preliminary plat application on its finding that "[o]ngoing water quality and quantity issues have not been resolved." The subdivision ordinance does not contain a standard for water quality and quantity. The zoning ordinance contains a floodplain district ordinance, which refers to water supply:

> **Review criteria.** No land shall be subdivided, platted or developed as a PUD, which is unsuitable for the reason of flooding, inadequate drainage, *water supply* or sewage treatment facilities.

Sherburne County Zoning Ordinance § 13, subd. 7(1) (floodplain district) (emphasis added).

Assuming that the board was referring to the floodplain ordinance in its decision, the evidentiary support for the denial is not in the record. The meeting minutes reflect that the board heard testi-

mony about water quality and quantity from several neighbors and that neighborhood opposition was also reflected in the planning commission's recommendation. Although a governmental entity may consider neighborhood opposition to zoning issues, *Swanson*, 421 N.W.2d at 313, by itself this opposition does not provide a legally sufficient reason or substantial evidentiary support. *Trisko v. City of Waite Park*, 566 N.W.2d 349, 356 (Minn.App. 1997), *review denied* (Minn. Sept. 25, 1997).

 A decision-making entity "may not reject expert testimony without adequate supporting reasons." *SuperAmerica Group, Inc. v. City of Little Canada*, 539 N.W.2d 264, 267 (Minn.App.1995), *review denied* (Minn. Jan. 5, 1996). The substantive evidence on water quality and quantity was provided by the Hurrles. The Hurrles completed several studies of the groundwater for the county and brought an engineering expert to the board's July 7 meeting. The studies indicated that a sufficient supply of ground water was available and that no degradation of the area water supply had occurred or was anticipated. No contrary studies were received or suggested. On these facts, the record does not provide the substantial evidentiary support necessary to demonstrate the board's denial was not arbitrary and capricious.

 The board's failure to cite an ordinance in support of its decision also indicates arbitrary action and hampers effective judicial review. A reviewing court should not have to guess which zoning ordinances the board relied on in reaching its decision. "Along with a clearly articulated rationale for its decision, specific reference to the local ordinance is essential to facilitate effective judicial review." *Earthburners, Inc. v. County of Carlton*, 513 N.W.2d 460, 463 (Minn.1994). The absence of substantial evidentiary support and the board's failure to justify its finding based on an ordinance indicate arbitrary action.

Finally, we note that even if the board's July 21 findings could be considered contemporaneous, these findings have the same deficiencies as the July 7 findings. The July 21 findings added that (1) the Hurrles did not have legal title to the property as of July 7; (2) the Hurrles' involvement in a bankruptcy case made action uncertain; (3) the application did not satisfy the surface-water drainage requirements in the county's floodplain ordinance; and (4) the Hurrles' proposed solution of providing wells was questionable.

Except for the surface-water drainage finding, none of these findings are based on an ordinance. With respect to the three findings not based on an ordinance, we observe first that the board's decision not to accept a proposal for wells to eliminate any possible water problem does not provide an independent basis for denying Hurrles' plat application. Second, the record indicates the board's findings on the property's legal title were unfounded and erroneous, and third, uncertainty because of a bankruptcy proceeding was also unsupported. The Hurrles' attorney had provided the Sherburne County Attorney with documents confirming the Hurrles' legal title and a bankruptcy court order allowing the Hurrles to proceed with their plat application. These findings fail to provide substantial evidentiary support for the board's decision. *See Hay v. Township of Grow*, 296 Minn. 1, 6–7, 206 N.W.2d 19, 23 (1973) (absence of factual basis for conclusions deprives the reasons of value).

Only the floodplain ordinance offers an arguable basis for denial of the plat application. The record, however, provides no indication that this was the reason for the board's denial. Nothing in the July 7 meeting minutes establishes that the county board relied on the floodplain provisions in denying the plat application. And nothing in the minutes contradicts the affidavit of Hurrles' engineer, who attended the meeting and stated that he was not asked any questions about the floodplain ordi-

nance. The findings adopted by the board demonstrate that the board declined to allow the Hurrles to address issues relating to surface-water drainage. The board admits its consulting engineering firm misplaced the Hurrles' plat proposal. The firm notified the Hurrles on June 29, only a week before the July 7 meeting, about a potential surface-water drainage issue. But the board's consulting engineering firm that reviewed the plat application found no significant defects in the plat application. Indeed, in a June 29 letter to the board, the firm stated, "If the County approves this plat, we recommend the plat be approved, provided the following special and general provisions are included in the grading permit." The arguable application of the floodplain ordinance is defeated by the absence of any—much less substantial—evidentiary support for finding that a significant surface-water problem exists. Even if the July 21 findings had been issued contemporaneously, the record does not support denial of the Hurrles' plat application.

## DECISION

We reverse and remand for the county to approve the Hurrles' preliminary plat application. The board may include reasonable conditions, such as those listed in the engineering report prepared for the county, that the Hurrles must comply with to obtain final approval of their plat application.

**Reversed and remanded.**