**INDEPENDENT SCHOOL DISTRICT NO. 709, Duluth, Relator,**

v.

**Linda BONNEY, Complainant,**

**Commissioner of Minnesota Department of Education, Respondent.**

**No. A05–84.**

Court of Appeals of Minnesota.

Nov. 1, 2005.

Elizabeth A. Storaasli, Agnew Dryer Storaasli Knutson & Pommerville, Ltd., Duluth, MN, for relator.

Luther A. Granquist, Minneapolis, MN, for complainant.

Mike Hatch, Attorney General, Martha J. Casserly, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and CRIPPEN, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

KALITOWSKI, Judge.

Relator Independent School District No. 709, Duluth, challenges respondent Minnesota Board of Education's (MDE) order concluding that relator violated state and federal law as it pertains to children with disabilities attending Little Learners Enrichment Center (LLEC), a private early intervention program. On appeal, relator argues that respondent acted arbitrarily, unreasonably, and in violation of the law by (1) deciding that relator failed to provide transportation to children attending LLEC; (2) deciding that relator did not properly implement individualized education plans (IEP) for children attending LLEC and requiring relator to provide compensatory education; (3) deciding that relator did not adequately consider extended school year (ESY) services for children attending LLEC and requiring relator to revise those services; (4) concluding that relator failed to provide parents of children attending LLEC with adequate written notice of proposed special-education services and ordering corrective action; (5) concluding that members of relator's IEP teams were not qualified as district representatives and requiring that an LLEC representative be part of every IEP team for children attending LLEC. Relator also argues that MDE's complaint process was arbitrary, unreasonable, and contrary to the requirements of 34 C.F.R. §§ 300.660–300.662 (2004).

## FACTS

The Individuals with Disabilities in Education Act (IDEA) requires school districts to provide special education and related services. 20 U.S.C. § 1400(d)(1)(A) (2000). Independent School District Number 709 in Duluth, Minnesota, provides early childhood special education services at Little Learners Enrichment Center (LLEC), a licensed treatment and daycare program. Children at LLEC receive special education services as well as other preschool or daycare services. Details of the services provided to each child are described in that child's individual education program (IEP). Each IEP sets out the types of special education and related services that the child should receive at LLEC.

On August 3, 2004, complainant Linda Bonney of the Minnesota Disability Law Center entered a complaint against relator with respondent on behalf of students attending LLEC. Respondent's investigator gathered information regarding the claims in the complaint and respondent issued a complaint decision addressing them on January 4, 2005.

Relevant to this appeal, respondent found that relator (1) failed to provide transportation for LLEC students; (2) failed to properly implement students' IEPs; (3) failed to properly address whether students required extended school year (ESY) services and failed to provide proper notice to parents when ESY was refused; (4) failed to provide proper written notice to parents of LLEC students; and (5) did not have the required personnel present at IEP team meetings. In conjunction with its findings, respondent ordered relator to undertake corrective action, including orders (1) to provide transportation for children enrolled at LLEC; (2) to develop compensatory education plans for students; (3) to revise and implement policies concerning ESY and notice of ESY refusal; (4) to revise policies regarding parental notice; and (5) to revise policies so that all required team members will attend IEP team meetings.

Relator petitioned this court for a writ of certiorari to review respondent's decision. This court issued a writ of certiorari on January 14, 2005. Petitioner chal-

lenges each of the aforementioned findings and corrective orders as well as respondent's complaint process itself.

## ISSUES

1. Did respondent err in finding that relator was required to provide transportation for children attending LLEC?

2. Is respondent's finding that relator failed to properly implement children's IEPs supported by substantial evidence?

3. Are respondent's findings that relator's Extended School Year services (ESY) policy was deficient and that relator did not properly consider ESY services for children attending LLEC supported by substantial evidence?

4. Is respondent's finding that relator failed to provide proper written notice to parents of LLEC students supported by substantial evidence?

5. Is respondent's finding that relator failed to meet attendance requirements at IEP meetings supported by substantial evidence?

6. Did respondent's complaint resolution process violate the Individuals with Disabilities in Education Act?

## ANALYSIS

■ "When reviewing agency decisions we adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (quotation omitted).

■ "When an agency performs the quasi-judicial function of receiving and weighing evidence, making factual findings, and applying a prescribed standard to reach a conclusion, a reviewing court applies the substantial-evidence test." *Hurrle v. County of Sherburne*, 594 N.W.2d 246, 249 (Minn.App.1999) (quotation omitted). Substantial evidence is defined as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn.2002). Under the substantial evidence test, the reviewing court evaluates "the evidence relied upon by the agency in view of the entire record as submitted." *Cable Communications Bd. v. Nor-West Cable Communications P'ship*, 356 N.W.2d 658, 668 (Minn.1984). If an agency engages in reasoned decision-making, the reviewing court will affirm, even though it may have reached a different conclusion than the agency. *Id.* at 669.

### I.

■ Relator argues that respondent erred in its interpretation of Minn.Stat. § 123B.88 (2004) by construing the statute to require school districts to transport children with disabilities when the children receive special instruction and daycare services in the same location. Relator contends that such a broad interpretation impermissibly contradicts the transportation requirements of the federal IDEA. We disagree.

Both Minnesota and federal laws address transportation requirements for disabled students. The plain language of the Minnesota statute requires transportation of preschool children for special education services. A school board "must provide transportation to and from the home of a child with a disability not yet enrolled in

kindergarten when special instruction and services under sections 125A.03 to 125A.24, 125A.26 to 125A.48, and 125A.65 are provided *in a location other than in the child's home.*" Minn.Stat. § 123B.88, subd. 1 (2004) (emphasis added). "[S]pecial instruction and services" means "a free and appropriate public education provided to an eligible child with disabilities and includes special education and related services defined in the Individuals with Disabilities Education Act." Minn.Stat. § 125A.03(a) (2004).

Under the federal IDEA, children with disabilities are entitled to a "free appropriate public education," (FAPE) which is defined as "special education and related services." 20 U.S.C. § 1401(8) (2000). One such "related service" is transportation, or the "[t]ravel to and from school and between schools." 20 U.S.C. § 1401(22); 34 C.F.R. § 300.24(b)(15)(i) (2004). Specifically, the IDEA covers "transporting a preschool-aged child to the site at which the public agency provides special education and related services to the child, *if that site is different from the site at which the child receives other preschool or day care service.*" 34 C.F.R. pt. 300, app. A (2004) (emphasis added).

Relator argues that the Minnesota statute's phrase, "includes special education and related services defined in the Individuals with Disabilities Education Act," limits the definition of "special instruction and services" to those defined in the IDEA. Thus, relator argues, because the IDEA only requires transportation when a child receives special education and daycare at different sites, children who receive both daycare and special education services at the same site are not entitled to transportation under the IDEA as incorporated by Minn.Stat. §§ 123B.88, 125A.03(a).

This court retains the authority to review de novo questions of law, which arise when an agency decision is based upon the meaning of words in a statute. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). A reviewing court is not bound by an agency's interpretation of a statute. *Id.*

When interpreting Minnesota statutes, "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2004). If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996). "[T]he word includes is usually a term of enlargement, and not of limitation." *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983) (quotation omitted). Therefore, transportation to and from services *including* "special education and related services defined in the Individuals with Disabilities Education Act" is unambiguously not *limited* to those instances when transportation is required under the IDEA.

Generally, courts have upheld state educational requirements that go beyond those delineated in the IDEA. *See, e.g., CJN by SKN v. Minneapolis Public Schools*, 323 F.3d 630, 639 (8th Cir.2003) (holding that when state educational benefits exceed minimum federal standards, the state standards are enforceable through the IDEA); *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 785 (1st Cir.1984) (holding that states may enforce their own laws for disabled children and are not limited to the minimum standards of the federal law), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). As such, respondent did not err in applying the more expansive Minnesota standard to require transportation for LLEC students.

We conclude that the plain language of Minn.Stat. § 123B.88 requires transportation when special instruction and services are provided "in a location other than in the child's home" even if that location is not, as the IDEA requires, "different from the site at which the child receives other preschool or day care services."

In addition, the Minnesota statute does not set minimum educational time requirements before triggering a district's transportation duties. Thus, we reject relator's argument that respondent's interpretation of the statute was unreasonable as it applied to children who receive only minimal amounts of educational services while at the daycare location. "The wisdom or propriety of the statute is not a judicial question, but one solely for the Legislature." *Common Sch. Dist. No. 85 v. County of Renville,* 141 Minn. 300, 304, 170 N.W. 216, 218 (1918).

## II.

Relator argues that respondent's finding that relator failed to properly implement children's individual education programs (IEPs) was erroneous. Therefore, relator contends, respondent's order requiring the district to provide compensatory education plans was also in error. Relator also asserts that respondent was required to negotiate and to reconsider its decision. We disagree.

■ Respondent's conclusion that the district owed the children compensatory time is supported by substantial evidence in the record. Respondent examined calendars, attendance sheets, and IEPs to determine that services were owed to, but not received by, certain children. Relator suggests a different method of calculating compensatory time. But the fact that there is an alternate method does not establish a lack of substantial evidence to support the reasoned decision-making employed by respondent. Once respondent found that relator failed to provide services to children, respondent had the authority to order relator to develop compensatory education plans. *See* 34 C.F.R § 300.660(b)(1) (2004).

In conducting our independent review of respondent's calculations, we have determined that there are possible mathematical errors concerning the precise amount of compensatory time owed to the children. Therefore, we direct respondent to review its calculations and, where appropriate, correct the amount of compensatory time ordered.

■ Finally, we reject relator's contention that respondent had a duty to negotiate or reconsider its decision. Under 34 C.F.R. § 300.661(b)(2) (2004), a state educational agency may develop negotiation procedures "if needed," but it is not affirmatively required to negotiate its final decision. And although respondent's decision stated that "[d]isputes over compensatory education plans will be resolved by the MDE," an agency can no longer correct its errors when it loses jurisdiction by appeal or certiorari. *Anchor Cas. Co. v. Bongards Co-op. Creamery Ass'n,* 253 Minn. 101, 106, 91 N.W.2d 122, 126 (1958). Here, the record indicates that this court granted relator's petition for writ of certiorari on January 14, 2005, but relator did not request reconsideration from respondent until February 4. By then, respondent did not have jurisdiction to reconsider its decision.

## III.

■ Respondent found that relator's extended school year services (ESY) policy was inconsistent with state and federal law and that the record lacked evidence that IEP teams actually considered ESY for some children. Relator contends that

those findings are arbitrary, unreasonable, unsupported by substantial evidence, and under an erroneous theory of law. We disagree.

Under the IDEA, ESY must be provided during a break in instruction if a child's IEP team determines that the services are necessary in order to provide FAPE to the child. 34 C.F.R. § 300.309(a)(2) (2004); Minn. R. 3525.0755, subp. 1 (2003). Minnesota law requires an IEP team to consider ESY and dictates the circumstances under which the team must order ESY. At least annually, the IEP team must determine a pupil is in need of ESY services if:

A. there will be a significant regression of a skill or acquired knowledge from the pupil's level of performance on an annual goal that requires more than the length of the break in instruction to recoup unless the IEP team determines a shorter time for recoupment is more appropriate;

B. services are necessary for the pupil to attain and maintain self-sufficiency because of the critical nature of the skill addressed by an annual goal, the pupil's age and level of development, and the timeliness for teaching the skill; or

C. the IEP team otherwise determines, given the pupil's unique needs, that ESY services are necessary to ensure the pupil receives a free appropriate public education.

Minn. R. 3525.0755, subp. 3.

## 1. ESY policy

Relator's Total Special Education Systems handbook includes a complete copy of Minn. R. 3525.0755 and a document outlining the procedure for determining when ESY is appropriate for a child. Relator's procedure states that "[i]f the student is able to maintain or recoup skills in a reasonable amount of time, and self-sufficiency or a unique need is not a concern, the student does NOT qualify for ESY services." Citing that statement, respondent found that relator's policy was inconsistent with federal and state law, specifically Minn. R. 3525.0755, because its rewording of the state's requirement in the negative was confusing and could result in limiting the group of children for whom ESY may be an option.

Relator argues that because a complete copy of Minn. R. 3525.0755 is in its handbook, respondent erred in finding that it failed to comply with the statute. But respondent based its finding that the policy was in violation on relator's failure in its summary of the procedure to include paragraph C. Thus, although relator included the appropriate statute in its manual, the actual procedural standard was confusing and left out the statute's residual qualification for ESY when the team "otherwise determines" it "necessary."[1] *See* Minn. R. 3525.0755, subp. 3. We conclude that substantial evidence supports respondent's finding that relator's ESY policy failed to properly cite the circumstances in which a child should receive ESY.

## 2. ESY consideration

The record indicates that parents of an LLEC child receive a notice when an IEP team is going to review their child's IEP. The notice informs parents of topics the team will discuss, "including consideration of extended school year services." The only mention of ESY in some IEPs is a question asking whether extended school

---

1. Relator contends that respondent approved its ESY policy in connection with a prior complaint. But, the record indicates that respondent only examined relator's memoran-dums to staff and training materials at that time, and neither reviewed nor approved relator's actual policy.

year services are required for the child. Following that question is a box marked "no." Those IEPs did not discuss or explain why ESY was inappropriate.

Respondent examined relator's handbook, IEPs, and notices and determined that there was no evidence that the IEP teams considered ESY for some students. A review of the record indicates that the evidence was such that a "reasonable mind might accept as adequate" to support the conclusion that the IEP teams failed to adequately consider ESY. Therefore, we conclude that respondent's finding was supported by substantial evidence in the record.

## IV.

◼ The IDEA requires prior written notice when the district or educational agency proposes or refuses to initiate or change the identification, evaluation, or educational placement of a child or the provision of a FAPE to a child. 34 C.F.R. § 300.503(a)(1)(i) (2004); Minn. R. 3525.3600 (2003). State and federal laws require seven specific items in each notice: (1) a description of the action that the district proposes or refuses; (2) an explanation of why the district proposes or refuses to take the action; (3) a description of any other options the district considered and the reason why it rejected the options; (4) a description of each evaluation procedure, test, record, or report the agency used as a basis for the proposed or refused action; (5) a description of any other factors relevant to the proposal or refusal; (6) a statement that the child's parents are protected under procedural safeguards and, if the notice is not an initial referral for evaluation, the means by which a copy of the procedural safeguards can be obtained; and (7) sources for parents to contact for help understanding the law. 34 C.F.R. § 300.503(b); Minn.Stat. § 125A.091, subd. 3 (2004).

Here, respondent considered relator's notices and its IEPs and determined that they failed to meet all of the required components. The record indicates that when relator's IEP teams declined to provide a service to a child, the team failed to consistently elaborate on the reasoning behind those decisions. Such failure to explain why the district refused to take certain action is a violation of the second statutory requirement under 34 C.F.R. § 300.503(b) and Minn.Stat. § 125A.091, subd. 3.

Relator argues that it would be "absurd" for respondent to require an explanation each time an omitted goal, service, or accommodation was rejected. But neither the statute nor respondent requires explanations for every issue that the evaluation does not consider. They merely require explanations for refused services.

We conclude that respondent properly cited the statutory requirements for written notices under 34 C.F.R. § 300.503(a)(1)(i) and Minn. R. 3525.3600 and that substantial evidence supports respondent's conclusion that relator failed to meet all of the requirements.

## V.

◼ Respondent concluded that relator violated federal regulations because qualified district representatives, LLEC representatives, and regular education teachers did not attend some IEP team meetings. Relator challenges that holding, arguing that respondent erred because relator's district representatives were qualified under the statute and because neither LLEC representatives nor regular education teachers were required to be in attendance. We disagree.

### 1. District representatives

A public agency must ensure that the IEP team for each child includes a representative of the public agency who "(i) [i]s qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities; (ii)[i]s knowledgeable about the general curriculum; and (iii)[i]s knowledgeable about the availability of resources of the public agency." 34 C.F.R. § 300.344(a)(4) (2004).

Here, respondent's investigator sent e-mails to two of relator's district representatives asking questions about the district's general curriculum and resources. One representative's response indicated a lack of familiarity with the curriculum. Another representative's response did not address the district's resources beyond suggesting others who would have such information. We conclude that respondent's determination that relator's representatives failed to meet the statutory requirements is supported by substantial evidence in the record.

Relator contends for the first time on appeal that another individual who attended IEP meetings, D.B., was qualified as a district representative. Because relator did not identify D.B. as a district representative in the earlier proceeding before respondent, this court cannot consider that identification for the first time on appeal. *See Cable Communications Bd. v. Nor-West Cable Communications P'ship*, 356 N.W.2d 658, 668 (Minn.1984) (stating that the substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency). Therefore, this decision does not address D.B.'s qualifications as a district representative.

### 2. LLEC representatives

A public agency "shall ensure that a representative of the private school or facility attends the meeting." 34 C.F.R. § 300.349(a)(2) (2004). Respondent found that relator, the public agency, violated that regulation by failing to ensure that LLEC representatives attended specific IEP team meetings.

Relator acknowledges that no LLEC representative attended the meetings, but argues that, because LLEC is a treatment facility and daycare center, and not a school, the regulation does not apply to its representatives. But, the statute unambiguously applies to public schools or *facilities*. Because it is undisputed that LLEC is a facility, the statute applies. Respondent accurately cited 34 C.F.R. § 300.349(a) and respondent's conclusion that relator violated it is supported by substantial evidence in the record.

### 3. Regular education teachers

A public agency must ensure that the IEP team for each child with a disability includes "[a]t least one regular education teacher of the child (if the child is, or may be, participating in the regular education environment)." 34 C.F.R. § 300.344(a)(2). Relator challenges respondent's conclusion that a regular education teacher was required at student D.D.'s May 2004 IEP team meeting.

Relator admits that D.D. would have been placed in special needs kindergarten the next year and possibly integrated "in art and/or music." The record further indicates that D.D. was to be "mainstreamed with the rest of her class for specialist, center/story time, and other activities as determined by the child study team in the Fall." Taken in its entirety, we conclude that the evidence supports respondent's conclusion that D.D. would be participating in a regular education envi-

ronment so that a regular education teacher should have attended her IEP meeting.[2]

## VI.

Relator also argues that respondent's complaint resolution procedure violated federal complaint regulations. Federal regulations, 34 C.F.R. §§ 300.660–300.662 (2004), require state educational agencies (SEAs) to develop a written complaint resolution procedure (CRP). Additionally, the regulations outline minimum requirements that SEAs must meet in administering complaint procedures under the IDEA. Whether relator complied with the regulations is a question of law, which we review de novo. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ Relator asserts this process argument for the first time on appeal. The general rule that matters not raised below are not addressed on appeal extends to appeals from administrative decisions. *E.N. v. Special Sch. Dist. No. 1*, 603 N.W.2d 344, 348 (Minn.App.1999). But an appellate court, in its discretion, may review any matter in the interest of justice. *Agra Resources Coop v. Freeborn County Bd. of Comm'rs*, 682 N.W.2d 681, 684 (Minn.App.2004).

■ First, relator argues that respondent's CRP violated federal regulations because it was adversarial. As authority requiring that the CRP process be nonadversarial, relator cites a case from the federal district court, *Megan C. v. Indep. Sch. Dist. No. 625*, 57 F.Supp.2d 776 (D.Minn.1999). But *Megan C.* does not support relator's contention. The court in *Megan C.* does not require that the CRP process be nonadversarial; it merely de-

scribes the CRP as "informal and less adversarial" when compared to due process hearings. 57 F.Supp.2d at 791.

Second, relator argues that respondent's investigation was not independent. Under 34 C.F.R. § 300.661(a), each SEA shall "[c]arry out an independent on-site investigation" and "make an independent determination" as to whether a public agency is violating the IDEA. Relator argues that respondent's CRP lacked independence because respondent allowed complainant and the LLEC director to respond in writing about the allegations in the complaint. Although the regulations require the SEA to "[g]ive the complainant the opportunity to submit additional information, either orally or in writing, about the allegations in the complaint," a school district has no corresponding right to submit additional information. 34 C.F.R. § 300.661(a)(2). As such, we find no violation under the regulation where respondent did not allow relator to submit additional information.

Relator also argues that respondent's CRP was not independent because respondent did not provide relator with copies of the complaint or other materials. But the record indicates that respondent provided relator a summary of the complaint. And there is no statutory duty for respondent to provide a copy of the complaint where, as here, relator did not request a copy until after this court granted certiorari. Relator fails to demonstrate how failing to provide relator documentation, when there was no duty to provide it and relator never requested it, destroys respondent's independence.

Third, relator argues that respondent violated 34 C.F.R. § 300.661(b)(2) because it failed to provide technical assistance or negotiation procedures for effective imple-

---

**2.** In its complaint decision, respondent also held that no regular education teacher attended D.B.'s IEP meeting. On appeal respondent concedes possible error in that conclusion. Respondent should amend its decision accordingly.

mentation of its decision. Under 34 C.F.R. § 300.661(b)(2), an SEA's CRP must "[i]nclude procedures for effective implementation of the SEA's final decision, if needed, including—(i) [t]echnical assistance activities; (ii)[n]egotiations; and (iii)[c]orrective actions to achieve compliance." But the regulation does not "require" technical assistance or negotiations; it only demands them "if needed." Moreover, the record does not indicate that such assistance or negotiation was requested prior to relator's petition for a writ of certiorari.

Fourth, relator argues that respondent failed to include an internal review process within its CRP. A state "may choose to establish procedures for reconsideration of complaint decisions." *Memorandum to Chief State School Officers,* 34 IDELR 264 (OSEP, July 17, 2000). But relator does not provide any legal authority affirmatively requiring respondent to develop an internal review process.

Finally, we note that respondent extended the deadline for issuing its decision five times but required relator to immediately implement its orders. Given the complexities of this matter, it would have been in the best interests of all parties for respondent to initially have allowed relator some of the same latitude it allowed itself by providing additional time for review and informal dispute resolution. Nevertheless, as a matter of law, we cannot say respondent's CRP process violated the law.

## DECISION

Under the plain language of Minn.Stat. § 123B.88, subd. 1 (2004), a school district must provide transportation to and from the home of a child with a disability not yet enrolled in kindergarten when special instruction and services are provided in a location other than in the child's home, even when the instruction and services take place at the same site where the child receives daycare.

In addition, we conclude that because respondent's findings and complaint decision were supported by substantial evidence in the record, respondent did not act arbitrarily or unreasonably and that neither respondent's decision nor its complaint resolution process violated the law.

We therefore affirm respondent's order but remand in part for respondent (1) to review its calculations and, where appropriate, correct the amount of compensatory time ordered; and (2) to amend its order regarding the regular education teacher's attendance at D.B.'s IEP meeting.

**Affirmed in part and remanded in part.**