*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0893**

Mark R. Zweber,
Respondent,

vs.

Credit River Township, et al.,
Appellants.

**Filed March 16, 2015
Reversed
Hudson, Judge**

Scott County District Court
File No. 70-CV-13-5687

Thomas M. Fafinski, Nathan W. Nelson, Lesley J. Adam, Virtus Law, PLLC, Brooklyn Park, Minnesota (for respondent)

Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota (for appellants)

Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and Minge, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellants county and township challenge the district court's judgment determining that it had subject-matter jurisdiction to address respondent developer's

---
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

constitutional claims arising from the approval of his plat application with conditions. Because the plat approval subject to conditions is a quasi-judicial action, which is reviewable only by certiorari appeal within 60 days, and because respondent's constitutional claims are not separate and distinct from that action, we reverse.

**FACTS**

In January 2006, respondent Mark R. Zweber submitted to appellant Scott County a preliminary plat application for a proposed 39-lot subdivision, Estates of Liberty Creek (Liberty), to be located on an approximately 100-acre parcel of undeveloped land in appellant Credit River Township. The preliminary plat's northern section contained one through road; the southern section contained a double cul-de-sac, to be accessed through a road located in Territory, an adjacent development that had been established by Laurent Development Company, LLC (Laurent).

In March 2006, Laurent's president contacted county planning staff and officials with concerns relating to Liberty's street interconnectivity. After county and township staff met with Zweber to discuss amending the plat, he changed the proposal to add a through connection in the area of the previous cul-de-sac. A month later, Laurent's president wrote again to county officials, stating that Laurent was "still . . . very upset" with the proposed Liberty plat and suggesting a more westerly location for the new through street, a connection to County Road 8 for Liberty, and a different plat layout. County planning staff responded that a connection to Highway 8 was not recommended.

In August 2006, Laurent representatives once more contacted county officials and spoke at a county planning advisory commission meeting expressing concerns about

2

inadequate traffic circulation, road alignment close to Territory, and construction phasing diverting all construction traffic through residential areas. The county planning advisory commission recommended plat approval, with a new condition of phased construction proceeding from west to east. Zweber, however, asserted that starting construction on the west would require obtaining a roadway easement from the adjoining westerly property owner and involve prohibitive road-construction costs.

Two weeks later, Laurent's president also wrote to county officials, requesting that Zweber disconnect a planned connection allowing traffic between a cul-de-sac in Liberty and a cul-de-sac in Territory. In September 2006 the county board voted to approve the preliminary plat with conditions, including initial construction phasing from the west and barricading the connection with Territory until the development of Liberty was 90% complete. In October 2006, the county planning manager informed Zweber of the preliminary plat approval.

In July 2007, the county planning commission recommended final plat approval, but Zweber indicated that he had no plans to begin construction activity that year and submitted a different development plan. The next month, Zweber, the township, and the county board entered into a three-way Master Development Agreement, under which Zweber agreed to develop Liberty from west to east in two phases over a five-year period. During the second phase, temporary barricades would be erected in two locations and kept in place, respectively, until construction of the Liberty infrastructure was 90% complete and until the development of Territory was 90% complete. The agreement also

3

required Zweber to defend or indemnify against any of his own claims against the county or township.

Rather than proceeding with the approved Liberty development, Zweber applied to Scott County for a proposed re-subdivision, which would create nine lots off a cul-de-sac in Territory and incorporate the double cul-de-sac design initially proposed for Liberty. The county board denied the re-subdivision on the ground that it was not consistent with transportation standards outlined by county ordinance. Zweber appealed by certiorari to this court, which reversed and remanded for re-subdivision approval. *Zweber v. Scott Cty. Bd. of Commr's*, No. A09-1990, 2010 WL 2733275 (Minn. App. July 13, 2010).

Following this court's decision, the county and Zweber continued to negotiate a revised development plan for Liberty. But in September 2012, Zweber also sought mandamus relief in district court, alleging that the conditions imposed with respect to his preliminary plat in 2006 amounted to an unconstitutional taking of property without just compensation under the United States and Minnesota Constitutions and 42 U.S.C. §1983 (2006). In January 2013, over Zweber's objection, the county board approved a revised development plan. The next month, Zweber's lender served him with a foreclosure notice regarding the property.

In August 2013, Zweber filed an amended complaint and petition, realleging his taking claim and also asserting an equal-protection claim, alleging that he had received disparate treatment from that received by Laurent, a similarly situated developer, who had obtained a substantial construction credit for road work and built numerous cul-de-

4

sacs in Territory. Zweber sought an order for condemnation proceedings, damages, and a declaratory judgment that he was not required to indemnify against his claims against the county or township under the Master Development Agreement.

Both parties moved for summary judgment. The township and the county asserted, among other issues, that the district court lacked subject-matter jurisdiction over Zweber's claims because they related to quasi-judicial decisionmaking and should therefore have been asserted by certiorari appeal to this court. They also sought dismissal of Zweber's claims against the township on the ground that the county was the final decisionmaker regarding plat approval, as well as a judgment declaring that the Master Development Agreement required Zweber to indemnify.

The district court issued two partial judgments. In the first partial judgment, the district court issued an underlying order concluding that it had subject-matter jurisdiction to address Zweber's constitutional arguments and denied summary judgment on both parties' claims. The district court also dismissed Zweber's claim for mandamus relief and denied the county's and township's motion to dismiss the township as a party. The second partial judgment declared that the claim-waiver-and-indemnity provision in the Master Development Agreement did not apply, so that Zweber was not required to indemnify the county and township for his claims. The county and township appeal.[1]

---

[1] By order, a special-term panel of this court limited the scope of this appeal to the challenge to the district court's subject-matter jurisdiction raised by appellants.

## DECISION

The county and the township allege that the district court erred by concluding, in denying summary judgment, that it had subject-matter jurisdiction over Zweber's constitutional claims. This court reviews the district court's denial of summary judgment de novo "to determine whether genuine issues of material fact exist, and whether the district court correctly applied the law." *Cnty. of Wash. v. City of Oak Park Heights*, 818 N.W.2d 533, 538 (Minn. 2012) (quotation omitted).

Subject-matter jurisdiction involves the court's authority to hear the type of dispute and grant the type of relief sought. *Seehus v. Bor-Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010). Without subject-matter jurisdiction, a court must dismiss a claim. *See Tischer v. Hous. & Redev. Auth. of Cambridge*, 693 N.W.2d 426, 427 (Minn. 2005) (holding that the district court erred by failing to dismiss a claim for lack of subject-matter jurisdiction). The existence of subject-matter jurisdiction presents an issue of law, which we review de novo. *Id*. at 428.

"If a writ of certiorari filed under Minn. Stat. ch. 606 with the court of appeals is the exclusive method by which to challenge a municipality's decision, then the district court lacks subject-matter jurisdiction to hear the case." *Cnty. of Wash.*, 818 N.W.2d at 538. And if a litigant aggrieved by a decision fails to obtain a timely writ of certiorari, that litigant is not entitled to review on the merits of the challenge by way of some other remedy. *See id.*; *see* Minn. Stat. § 606.01 (2014) (providing that a party must apply to the court of appeals for a writ of certiorari "within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed").

6

Absent a statute expressly authorizing judicial review, "[w]hen the underlying basis of [a] claim requires a review of a municipality's quasi-judicial decision to determine its validity, the exclusive method of review is by certiorari under chapter 606." *Cnty. of Wash.*, 818 N.W.2d at 539–40, 542. The certiorari process comports with fundamental separation-of-power principles and provides an appropriate method to limit and coordinate judicial review of an executive body's quasi-judicial decisions. *Dietz v. Dodge Cnty.*, 487 N.W.2d 237, 239 (Minn. 1992). In contrast, a municipality's legislative decisions, which "affect the rights of the public generally," are not subject to certiorari review and must be challenged initially in district court. *Cnty. of Wash.*, 818 N.W.2d at 539 (quotation omitted).

To assist in determining whether a decision is quasi-judicial, reviewable only on certiorari to this court, or legislative, reviewable de novo in the district court, the Minnesota Supreme Court has articulated "three indicia of quasi-judicial actions." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn. 1999). Under those parameters, quasi-judicial decisionmaking generally involves: (1) investigating a disputed claim and weighing evidentiary facts; (2) applying those facts to a prescribed standard; and (3) making a binding decision regarding the disputed claim. *Id.*

Zweber asserts that his constitutional-taking and equal-protection claims were not the subject of quasi-judicial decisionmaking because the unconstitutional imposition of conditions on his preliminary plat involved neither the weighing of evidentiary facts nor applying facts to a prescribed standard. *Cf. id.* "The denial or approval of a preliminary plat application is a quasi-judicial administrative decision that we review to determine

7

whether the decision is unreasonable, arbitrary, or capricious." *Hurrle v. Cnty. of Sherburne*, 594 N.W.2d 246, 249 (Minn. App. 1999); *see also PTL, LLC v. Chisago Cnty. Bd. of Commr's*, 656 N.W.2d 567, 576 (Minn. App. 2003) (addressing county board's plat-denial decision on certiorari review). In addressing Zweber's application, the county board considered county-ordinance standards relating to the imposition of conditions necessary to protect public health, safety, and welfare. *See* Scott County, Minn., Land Subdivision Ordinance No. 7, § 4-2-1(13) (2011) (stating that a county board may impose conditions "it considers necessary" under those standards in granting a preliminary plat application). And it weighed evidentiary facts in making its decision. Therefore, the approval of Zweber's preliminary plat, with conditions, involved quasi-judicial decisionmaking.

While recognizing that approval of the preliminary plat was a quasi-judicial decision, the district court concluded that Zweber's constitutional claims lay outside the scope of certiorari review and were therefore properly raised in district court. In reviewing that decision, we examine the substantive nature of Zweber's claims and their relationship to the quasi-judicial determination of preliminary plat approval. *See Willis v. Cnty. of Sherburne*, 555 N.W.2d 277, 280–83 (Minn. 1996) (considering whether certiorari review was the exclusive method for reviewing an employment-termination decision, setting forth inquiry of examining the underlying claim and assessing whether its outcome depended on the validity of the municipality's quasi-judicial decision). Under this standard, we have held that a district court lacked subject-matter jurisdiction to address a challenge to a city's quasi-judicial decision to demolish a building as a

8

nuisance, even though the building's owner had characterized the claim as one for inverse condemnation. *See City of Minneapolis v. Meldahl*, 607 N.W.2d 168, 171–72 (Minn. App. 2000). We concluded in *Meldahl* that "[t]he takings claim . . . is not separate and distinct from the city's quasi-judicial decision to demolish the structure, because an inquiry into the facts surrounding the takings claim would involve an inquiry into the city's decision to demolish the structure. In such a case, jurisdiction is by writ of certiorari alone." *Id*. at 172.

We conclude that here, as in *Meldahl*, Zweber's constitutional claims are not "separate and distinct" from the quasi-judicial decision to approve the plat with conditions and that "an inquiry into the facts surrounding [those] claim[s] would involve an inquiry into" that decision. *Id*. Addressing Zweber's constitutional-taking and equal-protection arguments would require analysis of the reasoning behind the phased-development and barricade conditions imposed as part of the preliminary plat-approval decision. Stated another way, Zweber's constitutional claims could not stand alone without reference to the preliminary-plat-approval decision, which is a proper subject for certiorari review. *See id*. Therefore, because Zweber's constitutional claims are not distinct from the 2006 preliminary-plat-approval decision and cannot be addressed without examining the facts considered in that decision, he was required to assert those claims by way of certiorari appeal, rather than before the district court. The fact that Zweber now asserts those claims through a federal civil-rights statute does not change our resolution of this issue. *See, e.g., Briggs v. City of Rolling Hills Estates*, 47 Cal. Rptr. 2d 29, 33–35 (Cal. Ct. App. 1995) (holding that failure to seek judicial review, by way of

9

designated mandamus procedures, of city's decision imposing conditions on home addition precluded independent section 1983 action for damages).

We recognize, as did the district court, that certiorari is not the appropriate remedy to review most zoning decisions, and district-court actions for declaratory judgment, injunctive relief, or mandamus are appropriate to challenge those decisions. *See, e.g., Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn. 1981) (concluding that certiorari was not the proper procedure to address a city's rezoning decision because "rezoning involves a legislative determination"); *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 179 (Minn. 2006) (noting a declaratory-judgment action as appropriate to review a city's action denying a comprehensive-plan amendment). And a constitutional issue that could not have been addressed in an administrative body is appropriate for district-court resolution. *Neeland v. Clearwater Mem'l Hosp.*, 257 N.W.2d 366, 368 (Minn. 1977). But approval of a preliminary plat is a quasi-judicial decision, *Hurrle*, 594 N.W.2d at 249, and Zweber has failed to articulate reasons why his related constitutional claims could not have been addressed in a certiorari challenge to that decision. *See Meldahl*, 607 N.W.2d at 172; *see also Huygen v. Plums Enters.*, 355 N.W.2d 149, 153 (Minn. App. 1984) (addressing challenge to human rights commission's order under the Minnesota Administrative Procedure Act, Minn. Stat. §§ 14.001-.69 (1982), which allow reversal if agency's actions violate constitutional provisions, even though that act does not apply to municipal agencies).

Zweber argues that, even if preliminary approval of his plat with conditions may have been reasonable under statutory provisions, it could still have violated his

constitutional rights. Yet even if such an argument could be maintained, he has acknowledged that, in 2006, he was aware of the conditions imposed on the preliminary-plat approval that formed the basis for his constitutional claims. And at that time, he sought re-subdivision rather than challenging the preliminary plat's conditions. *Cf. Crystal Green v. City of Crystal*, 421 N.W.2d 393, 394–95 (Minn. App. 1988) (concluding that a developer who failed to show duress or coercion on the part of a municipality was precluded from asserting an inverse-condemnation action challenging a statutory dedication requirement after a plat was approved and filed), *review denied* (Minn. May 25, 1988). We conclude that, under the circumstances of this case, the district court lacked subject-matter jurisdiction to address Zweber's constitutional claims and erred by denying summary judgment on that issue.

**Reversed.**