**SPECIAL SCHOOL DISTRICT NO. 1, Relator,**

v.

**E.N., Respondent,**

**Commissioner of the Department of Children, Families & Learning, Respondent.**

**No. CX–00–1029.**

Court of Appeals of Minnesota.

Dec. 19, 2000.

Karen Ann Janisch, Rider, Bennett, Egan & Arundel, Minneapolis, for relator.

Katherine L. MacKinnon, St. Louis Park, for respondent E.N.

Mike Hatch, Attorney General, Martha J. Casserly, Assistant Attorney General, and Steven B. Liss, Assistant Attorney General, St. Paul, for respondent Commissioner of Department of Children, Families, and Learning.

Considered and decided by SCHUMACHER, Presiding Judge, AMUNDSON, Judge, and MULALLY, Judge.*

## OPINION

AMUNDSON, Judge.

This case originated when a dispute arose between the school district and the parents of a child eligible for special education services over whether the child should be placed in a school-based or home-based educational program. The matter was reviewed by two different administrative hearing officers each of whom ultimately decided, albeit with some differences, that the child should be placed in a school-based program. The parents appealed that decision to this court, which issued an opinion on December 21, 1999. As a result, the school district declined to reimburse the parents for expenses incurred in providing home-based educational services to the child during the time the appeal to this court was pending.

In this appeal the school district challenges the commissioner's ruling that the school district is obligated to reimburse the parents for the in-home educational services provided during the pendency of the prior appeal finding that reimbursement was statutorily mandated pursuant to the Individuals with Disabilities Education Act.

## FACTS

During the spring of 1998, the parents of E.N., a child with a disability, and relator Special School District No. 1 (school district), began reviewing E.N.'s individualized education program (IEP).[1] The parents sought to alter the IEP by increasing the number of hours of a particular in-home educational service from 30 to 70 hours per week. The school district rejected this request and proposed moving the student into a school-based program.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The Individuals with Disabilities Education Act requires that the district provide E.N. with a free appropriate public education (FAPE). Implementation of the FAPE is ac- complished pursuant to 20 U.S.C.A. § 1414(d)(2)(A) (2000), which requires:

> At the beginning of each school year, each local educational agency * * * shall have in effect, for each child with a disability in its jurisdiction, an individualized education program.

The parents requested a due process hearing pursuant to 20 U.S.C. § 1415(f) (1994). Following the hearing, the level-one hearing officer ordered the school district's proposal implemented with several modifications.

The parents appealed the decision to the level-two hearing officer, contending that E.N.'s educational program should consist of an 84 hour per week home-based program. The school district cross-appealed challenging two of the level-one hearing officer's modifications to its proposed IEP. The level-two hearing officer heard both appeals and reversed the level-one hearing officer's changes to the school district's proposed IEP, instead ordering that the school district's proposed IEP be implemented as set forth by the school district.

The parents then appealed the decision of the level-two hearing officer to this court, arguing that the level-two hearing officer lacked jurisdiction to hear the school district's cross-appeal. This court affirmed. *E.N. v. Special Sch. Dist. No. 1*, 603 N.W.2d 344 (Minn.App.1999).

During the pendency of the appeal to this court, the school district sought to implement the decision of the level-two hearing officer. The parties failed to agree on E.N.'s IEP. The school district ceased payment for the 30 hours of home-based educational services it had been making pursuant to the 1998 IEP that had been in force. The parents continued providing E.N. with home-based educational services and repeatedly sought reimbursement from the school district. The school district refused reimbursement and informed the parents that it would file a truancy report with the county if they did not begin the process of moving E.N. into the school-based program or officially withdraw E.N. from school. The parents then applied to home school E.N.

On November 22, 1999, the parents filed a complaint with respondent Commissioner of the Department of Children, Families, and Learning (commissioner). The commissioner found that the school district violated the Individuals with Disabilities Act. The commissioner ordered the school district to reimburse the parents of E.N. for expenses incurred providing home-based educational services to E.N. during the pendency of their appeal of the level-two hearing officer's decision to this court. This appeal by writ of certiorari followed.

## ISSUES

I. Was the commissioner's determination that federal law required the home-based IEP "stay put" until the court of appeals decision was rendered, arbitrary or capricious?

II. Did the parents of the student implicitly agree to the level-one IEP when they filed a limited appeal with this court?

III. Did the parents of the student relinquish their right to reimbursement for educational services when they removed the student from the public school system?

IV. Does this court have jurisdiction to review the decision of the commissioner?

## ANALYSIS

■ The decision of an administrative agency will not be reversed unless it "reflects an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence." *Glazier v. Independent Sch. Dist. No. 876*, 558 N.W.2d 763, 766 (Minn.App.1997) (quotation omitted). Statutory construction is a matter fully reviewable by an appellate court as it involves questions of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). But where the statutory language is technical in nature, and the agency's interpretation is longstanding, that interpretation is entitled to some deference. *Glazier*, 558 N.W.2d at 766 (quotation omitted).

### I. The "Stay Put" Requirement

■ The Individuals with Disabilities Education Act (IDEA) ensures that chil-

dren with disabilities receive a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c) (1994). The IDEA also contains several procedural safeguards "to insure the full participation of the parents and proper resolution of substantive disagreements." *Burlington Sch. Comm. v. Massachusetts Dep't of Educ.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). One of those safeguards is its "stay put" provision. The IDEA's "stay put" provision provides that

> during the pendency of *any proceedings* conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then-current educational placement of such child.

20 U.S.C. § 1415(e)(3)(A) (1994) (emphasis added). The child's "current educational placement" is the IEP "actually functioning when the 'stay put' is invoked." *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir.1996) (quotation omitted).

■ The school district contends that the commissioner's decision is erroneous because the judicial proceeding in question did not fall within the purview of the IDEA's "stay put" provision. Specifically, the school district argues that because there was no continuing judicial proceeding in which E.N.'s need to attend a school-based program or his need to begin transition to that program was in dispute, the "stay put" requirement did not require a continuation of, or reimbursement for, the home-based program. The school district contends that the pending judicial proceeding addressed only the timeliness of the their cross-appeal and the jurisdiction of the level-two hearing officer to consider and reverse the limited changes to

the school district's proposed IEP ordered by the level-one hearing officer. As support for its argument, the school district cites discussion of the corresponding federal regulation,[2] which states:

> It is important to note that these provisions would only apply where there is a dispute between the parent and the public agency that is the subject of administrative or judicial proceedings. If there is no such dispute that is the subject of a proceeding then the placement may be changed and this section does not apply.

Assistance to States for the Education of Children with Disabilities, 64 Fed.Reg. 12406, 12615 (March 12, 1999) (to be codified at 34 C.F.R. pt. 300); *see also Tennessee Dep't of Mental Health and Mental Retardation v. Paul B.*, 88 F.3d 1466, 1474 (6th Cir.1996) ("the 'stay put' rule is not designed to prolong 'the current educational placement' unless there is a genuine appealable issue that 'the current educational placement' is the appropriate placement under the Act and should not be changed."). Thus, the school district contends that the subject of the appeal before this court concerned not the dispute between the parent and the agency—that is, the implementation of the change in services—but rather the scope of those changes.

■ The school district's argument, however, is without merit. First, the plain meaning of the statute favors the commissioner's finding that the school district was obligated to provide services in conformance with the 1998 home-based IEP while the matter was on appeal to this court. When construing statutes, we give terms their plain and ordinary meaning. *Glazier*, 558 N.W.2d at 766. The IDEA states clearly that during the pendency of *any proceeding* under the act, the child should remain in the existing educational place-

---

**2.** The regulation provides:

> during the pendency of any administrative or judicial proceeding * * * unless the State or local agency and the parents of the child agree otherwise, the child involved in

the complaint must remain in his or her current educational placement.

Assistance to States for the Education of Children with Disabilities, 34 C.F.R. § 300.514(a) (2000).

ment. This rule, clear and unambiguous, is easily understandable given the statute's objective of protecting the rights of children with disabilities.

In addition to the plain meaning of the statute, the policy concerns behind the "stay put" provision support the interpretation employed by the commissioner. The "stay put" provision evidences a policy choice by Congress to allow "handicapped children, regardless of whether their case is meritorious or not, * * * to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996); *see also Raelee S.*, 96 F.3d at 83 (the purpose of the IDEA "stay put" requirement is to maintain the status quo and protect the child and the child's parents during the pendency of the review process). The discussion of the regulation relied on by the school district also states:

> The provisions maintaining the child's current educational placement pending proceedings regarding a complaint is a right afforded to parents to protect children with disabilities from being subjected to a new program that parents believe to be inappropriate.

Assistance to States for the Education of Children with Disabilities, 64 Fed.Reg. at 12615.

While the appeal to this court specifically challenges the child's placement, the decision did have specific and significant impact on important details of the educational services provided to E.N. The amount of time the parents were given to move E.N. from the home-based program to the school-based program, as well as the number of hours a specific therapy would be provided as part of the school-based program were disputed. Not minor matters, these were significant details left pending. As a result, E.N.'s transition from the home-based program to the school-based program lacked the requisite certainty and finality the regulation contemplates. Application of the "stay put"

provision to the school district was not arbitrary, capricious, nor erroneous as a matter of law.

## II. Agreement

■ The school district also argues that the commissioner erred when it found the IDEA's "stay put" provision controlling because it contends that the parents implicitly consented to the new IEP when they filed their limited appeal to this court. The school district contends that because the outcome of the parent's appeal could have been either affirmance of the level-two IEP or reinstatement of the level-one IEP, both of which mandated E.N.'s participation in a school-based program, that the parents implicitly "agreed" to the new school-based IEP.

The school district relies on the language of 34 C.F.R. § 300.514(a) (2000), which states that the "stay put" provision applies unless the agency and the parents "agree otherwise." Here, the parents challenged the level-two decision to reduce the number of hours of therapy in the school setting, as well as the decision to reduce the time allotted for the transition from the home-based program to the school-based program. The parents' appeal was brought after the school district advised them that it was going to implement the level-two order.

Even if the parent's appeal can be construed as an implicit agreement to move E.N. into a school-based program, the transition, as well as important details of that program, were disputed. It is evident the parties were awaiting the prior decision of this court to resolve how the transition would occur. Specifically, whether it would occur in accordance with the level-two hearing officer's decision or the level-one hearing officer's decision. Except for the ultimate placement, there was no agreement. The very important formula of how it would happen necessarily awaited this court's prior resolution of that dispute. Compliance with the "stay put" provision was, therefore, required.

## III. Reimbursement

The school district contends that the commissioner lacked jurisdiction to order it to reimburse the parents for the expenses incurred in providing a home-based education to E.N. during the pendency of the appeal. But reviewing the actions of the school district and determining whether the school district violated the "stay put" provisions of the IDEA is a task specifically delegated to the commissioner pursuant to 34 C.F.R. § 300.661(a)(3) (2000), which states that the state educational agency must:

> Review all relevant information and make an independent determination as to whether the public agency is violating a requirement of Part B of the Act [IDEA] or of this part [34 C.F.R. § 300].

The "stay put" law and its corresponding regulation are within the embrace of this mandate. The commissioner clearly had the authority to determine whether the school district violated the IDEA's "stay put" provision. If the state agency has determined that appropriate services where denied, it must address

> [h]ow to remediate the denial of those services, including, as appropriate, the awarding of monetary reimbursement or other corrective action appropriate to the needs of the child.

Assistance to States for the Education of Children with Disabilities, 34 C.F.R. § 300.660(b)(1) (2000). The school district contends that there was no finding by the commissioner that the school district failed to provide the student with a "free appropriate public education." But is this the only "service" contemplated by the regulation? The regulation, read as a whole, contemplates remedies for numerous violations of the IDEA's provisions, including providing services under the "stay put" requirement. The commissioner did not abuse her discretion in ordering the school district to reimburse the parents for services it should have provided in compliance with the IDEA "stay put" provision.

## IV. Home School Decision

The school district's final argument is that even if the commissioner correctly determined that the "stay put" provision required it to fund the home-based program during the pendency of the appeal, once the parents elected to home school their child, the school district's obligation ceased.

The school district notified the parents on November 10, 1999, that it would not abide by the 1998 home-based IEP and subsequently notified the parents on two occasions that it would file a truancy petition. The commissioner found this left the parents with three choices: (1) enroll the student in the school-based program and relinquish their right to continued placement under the 1998 home-based IEP; (2) keep schooling E.N. at home and risk the school district filing a truancy petition; or (3) remove E.N. from the public education system altogether and exclusively school him at home. The commissioner correctly observes that the parents, caught between Charybdis and Scylla, were forced to choose to home school E.N. The school district cannot now take advantage of the dilemma it created. The parents were effectively taking advantage of their right to continued education of E.N. in a home-based program (the child's "stay put" placement). If the school district had not threatened to file a truancy petition the parents would not have been forced to choose to home school E.N.

## V. Jurisdiction

E.N. argues that this court lacks jurisdiction to review the decision of the commissioner because the petition for writ of certiorari was not served in accordance with Minn.R.Civ.P. 4.03(a). Minn.R.Civ.P. 4.03(a) provides that service of summons

> [u]pon an individual [shall be made] by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein.

\* \* \*

If the individual is an infant under the age of 14 years, by serving also the individual's father or mother, and if neither is within the state, then a resident guardian if the infant has one known to the plaintiff, and if the infant has none, then the person having control of such defendant, or with whom the infant resides, or by whom the infant is employed.

Here, the process server's affidavit states that service was made upon the "Parents of E.N." by substitute service upon the nanny, K .D. But even if service upon the mother or father is required then such service can be accomplished by substitute service on the nanny because such person is within the meaning of the rule. Minn.R.Civ.P. 4.03(a); *see also Lebens v.*

*Harbeck,* 308 Minn. 433, 434, 243 N.W.2d 128, 129 (1976) (substitute service is a form of personal service).

## DECISION

The IDEA clearly required the school district to provide home-based educational services to the child while an appeal before this court was pending. Accordingly, the commissioner's decision was not erroneous as a matter of law.

**Affirmed.**