**INDEPENDENT SCHOOL DISTRICT
NO. 281, Robbinsdale, Minnesota,
Relator,**

v.

**MINNESOTA DEPARTMENT OF
EDUCATION, Respondent.**

No. A07–1.

Court of Appeals of Minnesota.

Jan. 8, 2008.

Stephen M. Knutson, Peter A. Martin, Knutson, Flynn & Deans, P.A., Mendota Heights, MN, for relator.

Lori Swanson, Attorney General, Martha J. Casserly, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; SHUMAKER, Judge; and WORKE, Judge.

### OPINION

SHUMAKER, Judge.

Relator Independent School District No. 281 appeals from an order by respondent the MDE, which concluded that the district violated Minn.Stat. §§ 125A.03 and 125A.18 (2006) and 34 C.F.R. § 300.309 (2006) by its policy of unilaterally limiting the special instruction and services, particularly extended school year (ESY) services, it made available to all disabled, nonpublic-school students in the district. The MDE's order required the district to take the following corrective action: (1) prepare, and provide to the MDE for pre-approval, a memorandum regarding the rights of nonpublic students residing in the district to a free appropriate public education (FAPE) and addressing the rights to special education and related services, including ESY, which would then be distributed to specified school personnel and (2) provide parents of all disabled, nonpublic-school students in the district with a redacted copy of the complaint decision and a letter, to be preapproved by MDE, explaining their "right to request an [individualized educational program (IEP)] meeting to discuss special education services including ESY and any necessary compensatory education."

On appeal, the district seeks reversal of the MDE's decision on several grounds, contending that (1) the MDE lacked authority to review the district's provision of ESY services for all nonpublic-school students with disabilities in the district, because the MDE's investigation arose from a complaint from one child's parent; (2) the MDE erroneously interpreted Minnesota law when it determined that the district had violated Minn.Stat. §§ 125A.03 and 125A.18 by its policy of unilaterally limiting the special instruction and services, particularly ESY services, to disabled, nonpublic-school students residing in the district; (3) Minn.Stat. § 125A.18 does not apply to the complainant's child, because it only applies to students who attend classes part time in the school district and during the regular school day; (4) the MDE lacked authority to address

violations based solely on state law; (5) the MDE's decision is arbitrary, capricious, and not grounded in substantial evidence because the record does not indicate that any parents of private-school students, other than complainant, sought ESY services from the district; and (6) the MDE's decision was untimely.

## FACTS

During the 2005–06 school year, the complainant's child attended third grade at a nonpublic school in the district, where the student was voluntarily enrolled. In February 2006, the district determined that the student met state eligibility criteria in the area of "other health disabilities" and needed special education and related services. Accordingly, the district prepared an IEP, describing the special education services the student would receive. The goals of the student's IEP were to increase math and organizational skills by providing for 30 minutes per week of direct math instruction, 10 minutes per week of indirect math services, 20 minutes per week of indirect occupational therapy, and 10 minutes per week of indirect organization skills service at a public school in the district. The student's IEP indicated that ESY services were not required.

In May 2006, the complainant asked the district to determine if the child was eligible for ESY services during the summer of 2006. In a May 22, 2006 email, the district's special-education director denied the complainant's request, explaining that (1) "[i]n the case of students that attend private or non-public schools we do not provide summer services for students with disabilities because our obligation for service is met by the commitment of resources during the school year" and (2) "[s]tudents attending private schools do not have an individual right to special education services."

Ultimately, the district agreed to provide some ESY services, specifically 60 minutes of math for four weeks. The district contends that the complainant agreed to these services and declined additional ESY services; but, the complainant claims that this was all the district would provide. The complainant contracted with a private school for additional summer services.

In a complaint filed July 21, 2006 with the MDE, the student's parent asserts that the district failed to provide appropriate ESY services to the student and violated federal and state law by denying ESY services to disabled, nonpublic-school students residing in the district. As a remedy, the complainant requested that the district reimburse her for tuition from the private school instruction the student received during the summer of 2006. In response, the district claimed that the complainant had agreed that the ESY services were sufficient, the student had completed the ESY program successfully, and that none of the other 17 special-education students enrolled in nonpublic schools during the 2005–06 school year requested or received ESY services.

In its November 3, 2006 decision, the MDE concluded that the district's policy of unilaterally limiting the special instruction and services, particularly ESY services, violated Minn.Stat. §§ 125A.03 and 125A.18 (2006) and 34 C.F.R. § 300.309 (2006). The MDE determined, however, that the district had provided appropriate ESY services to the student during the 2006 summer, even though it had misunderstood nonpublic-school students' rights to a FAPE. Thus, the district was not ordered to reimburse complainant for the tuition expenses.

The MDE's decision ordered other corrective action. In so ruling, the MDE noted that the district contended that no other disabled, nonpublic-school students

who received ESY services during the 2005–06 school year and no parents, other than the complainant, had sought ESY services. But the MDE surmised that this "lack of requests [was] likely due to the District's stated position on ESY for non-public students and not a lack of interest." Consequently, as corrective action, the MDE ordered the district to prepare a memorandum, which was to be disseminated to specified personnel, regarding the FAPE rights of nonpublic-school students residing in the district and addressing their rights to special education and related services, including ESY services. The district was also ordered to provide parents of all disabled, nonpublic-school students in the district with a redacted copy of the complaint decision and a letter, which was also subject to the MDE's pre-approval, explaining the parents' "right to request an IEP meeting to discuss special education services including ESY and any necessary compensatory education." This appeal followed.

## ISSUES

I. Does the MDE have authority to investigate the district's provision of ESY services for all nonpublic-school students with disabilities in the district and order corrective action, based on a complaint only from one student's parent?

II. Does Minnesota law require school districts to provide special instruction and services to students with disabilities attending nonpublic schools?

III. Does Minn.Stat. § 125A.18 (2006) apply if the student is not attending classes part time in the school district during the regular day?

IV. Does the MDE have authority to address violations based solely on state law?

V. Was the MDE's investigation and decision arbitrary, capricious, and not grounded in substantial evidence, where the MDE ordered corrective action, despite the lack of indication in the record that any parents of nonpublic-school students, other than complainant, sought ESY services from the district?

VI. Was the MDE's decision arbitrary, capricious, and not grounded in substantial evidence, because it was untimely?

## ANALYSIS

The scope of review on appeal from an agency decision is narrow. "When reviewing agency decisions we adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (quotation omitted). "The decision of an administrative agency will not be reversed unless it reflects an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence." *Special Sch. Dist. No. 1 v. E.N.*, 620 N.W.2d 65, 68 (Minn.App. 2000) (quotation omitted).

### I.

The district argues that the MDE lacks authority to review its provision of ESY services for all disabled, nonpublic-school students in the district, because the MDE's investigation arose from a complaint from only one student's parent. We disagree and conclude that the MDE has the general authority and responsibility to investigate the legality of the district's policies and, when necessary, to order corrective action to address the provision of

appropriate services to children with disabilities in the future.

One purpose of the IDEA is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A) (Supp.V.2005).[1] The IDEA defines "FAPE" as meaning

> special education and related services that—
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9) (Supp.V.2005). If necessary to ensure a FAPE, the school district must provide ESY services to students with disabilities. 34 C.F.R. § 300.309 (2006);[2] Minn. R. 3525.0755, subp. 1 (2005).

■■ There are two methods for resolving disputes over special education services: (1) an impartial due process hearing under 20 U.S.C. § 1415(f) (Supp.V.2005) and Minn.Stat. § 125A.091, subd. 12 (2006); and (2) the administrative complaint procedure, in which a complaint is filed with the state educational agency (SEA), which in Minnesota is the MDE.

*See Megan C. v. Indep. Sch. Dist. No. 625,* 57 F.Supp.2d 776, 780 (D.Minn.1999) (explaining that "two separate, distinct, and important remedies" exist for disputes with school districts over the appropriate special education services for children with disabilities). Either an "an individual or organization" may file a written complaint with the MDE. 34 C.F.R. § 300.662(a) (2006). The due process hearing procedure, meanwhile, is markedly different, because only parents or school districts have standing to assert a claim—a restriction that does not apply to the administrative complaint procedure. 20 U.S.C. § 1415(f); Minn.Stat. 125A.091, subd. 12. In this case, the complaining parent opted for the administrative complaint procedure by filing a complaint with the MDE on July 21, 2006.

Under the administrative complaint procedure, the MDE must, within 60 days, (1) determine whether an investigation is necessary, and if so, carry out an independent on-site investigation; (2) allow the complainant an opportunity to provide more information; (3) review all relevant information and determine whether the educational agency is violating IDEA; and (4) issue a written decision that addresses the complaint's allegations. 34 C.F.R. § 300.661(a) (2006). If the MDE finds "a failure to provide appropriate services," the MDE must address:

> (1) How to remediate the denial of those services, including as appropriate, the awarding of monetary reimbursement or other corrective action appropriate to the needs of the child; and
>
> (2) Appropriate future provision of services for all children with disabilities.

---

**1.** The current version of the United States Code includes all changes through January 2, 2006, and is the version applicable to the facts at hand.

**2.** The Federal Department of Education issued new IDEA regulations effective Oct. 13, 2006. *See* 71 Fed.Reg. 46540 (Aug. 14, 2006). The alleged violations in this case occurred during the summer of 2006, and therefore the new regulations do not apply to this matter.

34 C.F.R. § 300.660(b)(1), (2) (2006). Thus, these regulations obligate the MDE to address appropriate future provision of services for all children with disabilities when violations are found.

Here, the MDE concluded that the district did not fail to provide services to the complainant's child, because it ultimately agreed to provide reasonable ESY services to the student. The MDE did, however, conclude that the district's policy of unilaterally limiting the special instruction and services, such as ESY services, provided to disabled, nonpublic-school students in the district violated the law. Based, on this violation, the MDE ordered corrective action.

■ Framing its argument as one of standing, the district contends that the complainant-parent in this case had no authority to seek education relief on behalf of the children of other parents. The regulations governing the administrative complaint procedure, however, explicitly authorize individuals and organizations to file complaints. 34 C.F.R. § 300.662(a). And, Minnesota courts have previously upheld an MDE decision which was issued in response to a complaint filed on behalf of dozens of preschool students attending one daycare by an advocate, who was not a parent. *Indep. Sch. Dist. No. 709 v. Bonney,* 705 N.W.2d 209 (Minn.App.2005). Thus, notwithstanding that parents have an independent stake in their children's education and participate in IEP meetings, other individuals and organizations can raise issues and seek remedies for violations of special education services requirements through the administrative complaint procedure. *Compare Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,* — U.S. —, —, 127 S.Ct. 1994, 2004, 167 L.Ed.2d 904 (2007) (indicating that parents of special-education students have an independent stake in the substantive decisions regarding their children), *and* 34 C.F.R. § 300.344(a)(1)(2006) (providing that the IEP team includes the child's parents), *and* 34 C.F.R. § 300.345 (2006) (addressing parent participation), *with* 34 C.F.R. § 300.662(a) (specifying that individuals and organizations can file a complaint).

■ Moreover, because the regulations specifically permit the MDE to address the "[a]ppropriate future provision of services for all children with disabilities," the MDE did not exceed its authority or responsibility by considering, and addressing, the district's practice of denying ESY services to all disabled, nonpublic-school students in the district. 34 C.F.R. § 300.660(b)(2).

■ Because the MDE has general supervisory authority to address the appropriate future provision of services for all children with disabilities when it has found a failure to provide appropriate services, the MDE must, by implication, necessarily also have the general supervisory authority to address the appropriate future provision of services for all children with disabilities when the district's stated policy violates the law by expressly precluding such services. We conclude that these regulations are not intended to prohibit the MDE from requiring the district to take the corrective steps ordered here in an effort to ensure that children with disabilities in the district are provided appropriate special education services in the future.

With regard to the parents, we note that the MDE has merely required the district to provide the parents with a redacted copy of the MDE's decision in this matter and to "explain [] the parents' right to request an IEP meeting to discuss special education services including ESY and any necessary compensatory education." The

decision does not require, as the district contends, the district to hold meetings with a group of parents, or with individual parents, nor does the decision order the district to provide particular services to any individual student. Rather, the decision merely requires the district to give these parents accurate notice of rights they already possess.

## II.

The district also contends that the MDE erroneously interpreted Minnesota law when it determined that the district had violated Minn.Stat. §§ 125A.03 and 125A.18 (2006) by limiting special instruction and services to disabled, nonpublic-school students in the district. In so arguing, the district contends that nonpublic-school students do not have an individual right to a FAPE.

 This court reviews questions of statutory construction de novo. *Bonney*, 705 N.W.2d at 214 (citing *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989)). On review, we are "not bound by an agency's interpretation of a statute." *Id.* (citing *St. Otto's Home*, 437 N.W.2d at 39–40). But, the agency's interpretation is entitled to some deference "where the statutory language is technical in nature, and the agency's interpretation is longstanding." *E.N.*, 620 N.W.2d at 68. If the statute is unambiguous, this court applies its plain meaning. *Id.* at 69; *Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 874–75 (Minn. 2000). Furthermore, statutory language must be viewed in its proper context. *Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1*, 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974) ("[W]ords of a statute are to be viewed in their setting, not isolated from their context.").

 The federal IDEA does not require school districts to provide a FAPE to disabled students voluntarily enrolled in nonpublic schools. 20 U.S.C. § 1412(a)(10)(C)(i) (Supp V.2005). Rather, the IDEA only requires districts to provide services proportional to those provided to public-school students. 20 U.S.C. § 1412(a)(10)(A)(i)(I) (Supp.V.2005); 34 C.F.R. § 300.453(a)(1) (2006). But, the federal law represents minimum requirements, and states are free to impose additional requirements for special education services. *Bonney*, 705 N.W.2d at 214; 34 C.F.R. § 300.453(d) (2006) ("State and local educational agencies are not prohibited from providing services to private school children with disabilities in excess of those required by this part, consistent with State law or local policy.").

In its complaint decision, the MDE concluded that "[t]he District violated Minn. Stat §§ 125A.03 and 125A.18 when it limited special instruction and services provided to all non-public school students residing in the District." Minn. Stat § 125A.03(a) requires the district to "provide special instruction and services . . . for all children with a disability," and defines "special instruction and services" as meaning "a free and appropriate public education provided to an eligible child with disabilities and includes special education and related services defined in the Individuals with Disabilities Education Act, subpart A, section 300.24." Minn.Stat. § 125A.18, referred to in this opinion as the shared-time statute, governs the provision of special instruction and services for students with disabilities attending nonpublic schools, stating that "[n]o resident of a district who is eligible for special instruction and services under this section may be denied *instruction and service* on a shared time basis consistent with section 126C.19, subdivision 4, because of attending a nonpublic school. . . ." Minn.Stat. § 125A.18 (emphasis added).

The district contends, based on the absence of the word "special" from the second reference to "instruction and service," that the shared-time statute does not require the district to provide "special instruction and service" to disabled students attending nonpublic schools; rather, the district urges that under this statute such students would only be eligible for "instruction and service," apparently meaning non-special education instruction and services. In support of its argument, the district directs this court to the previous version of the shared-time statute. Before the statute was amended in 1998, the statute now known as section 125A.18 provided: "No resident of a district who is eligible for special instruction and services pursuant to this section shall be denied *provision of this instruction and service on a shared time basis* because of attendance at a nonpublic school...." Minn.Stat. § 120.17, subd. 9 (1996) (emphasis added).

When this court interprets a Minnesota statute, it construes words and phrases "according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2006). One rule of construction directs that "general words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08(3) (2006). "If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning." *Bonney*, 705 N.W.2d at 214 (citing *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996)).

Applying these rules, we conclude that the shared-time statute, Minn.Stat. § 125A.18, is unambiguous and prohibits school districts from denying special education instruction and services to children with disabilities enrolled in nonpublic schools. The general term "instruction and service" is restricted in its meaning by the preceding particular term, "special instruction and services." We note further that if the second reference to "instruction and service" does not refer back to the first reference to "special instruction and services," it is completely unclear what this second reference to "instruction and service" means. If the legislature had intended the meaning advanced by the district then the legislature would have so directed.

Because we conclude that the language is not ambiguous, we may not consider the legislative history arguments presented by both parties. *See* Minn.Stat. § 645.16 (2006) (providing that, where language is unclear, courts may look to several factors to discern its meaning); *ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn.2005) ("When a statute's meaning is plain from its language as applied to the facts of the particular case, a judicial construction is not necessary."); *see also Kersten*, 608 N.W.2d at 874–75 ("When the language of the statute is plain and unambiguous, it manifests the legislative intent and we must give the statute its plain meaning.").

### III.

The district next argues that, even if the MDE's interpretation of Minn.Stat. § 125A.18 is correct, the statute is inapplicable here because the student was not enrolled in or taking classes part time at a public school and because the ESY services sought by the student would be given during the summer, not the regular school day.

Shared-time pupils are defined as "those pupils who attend public school programs for part of the regular school day and who otherwise fulfill the requirements of section 120A.22 by attendance at a nonpublic school." Minn.Stat. § 126C.01, subd. 8

(2006). Schools receive funding, or shared-time aid, for such pupils. Minn. Stat. § 126C.19, subd. 1 (2006); Minn.Stat. § 126C.01, subd. 7 (2006).

■ Although the district contends that the complainant's child was not a shared-time pupil, the record reveals that the student was in fact attending classes at one of the district's elementary schools. The student's IEP, dated March 17, 2006, provided for 30 minutes per week of direct math instruction, 10 minutes per week of indirect math services, 20 minutes per week of indirect occupational therapy, and 10 minutes per week of indirect organization skills service at the district public school. Therefore, the student was a shared-time pupil.

■ The district also contends that it need not provide ESY services, because the services for the student, a shared-time pupil, would have been during the summer, which is not during the regular school day. This argument ignores Minnesota law which requires that school districts provide special instruction and services to all children with disabilities in the district. Minn. Stat. § 125A.03(a). "Special instruction and services" means a FAPE. *Id.* And, if necessary to ensure a FAPE, the school district must provide ESY services to students with disabilities. 34 C.F.R. § 300.309; Minn. R. 3525.0755, subp. 1. ESY services means "special education and related services" provided to disabled children "beyond the normal school year." 34 C.F.R. § 300.309(b)(1)(i). Accordingly, we conclude that Minn.Stat. § 125A.18 applies to nonpublic-school students with disabilities, like the complainant's child, and entitles them to special instruction and services, including ESY services.

**IV.**

The parties agree that the IDEA regulations require the MDE to "[r]eview all relevant information and make independent determination as to whether the public agency is violating a requirement of Part B of the [IDEA] or [the IDEA regulations]." 34 C.F.R. § 300.661(a)(3). But, the district argues that the MDE lacks authority to address special education violations beyond federal law and based solely on violations of state law. The district's violations in this case were premised on state law.[3]

■ The IDEA regulations incorporate state law. *Michael C. ex rel. Stephen C. v. The Radnor Twp. Sch. Dist.*, 202 F.3d 642, 652 (3rd Cir.2000). Special education and related services must meet the SEA's standards. 34 C.F.R. § 300.13(b) (2006); *see also* 34 C.F.R. § 300.220(a) (2006) (requiring a local education agency to have "policies, procedures, and programs that are consistent with the State policies and procedures" when providing for the education of children with disabilities in its district). And, a FAPE means special education and related services that meet the SEA's standards. 20 U.S.C. § 1401(9)(B). If a state statute requires a district to provide educational services that exceed the minimum federal standards, those state standards are enforceable through the IDEA. *CJN by SKN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 639 (8th Cir.2003); *Bonney*, 705 N.W.2d at 214. Therefore, we conclude that the MDE has the authority to enforce state laws that exceed the minimum federal standards.

**V.**

■ "The decision of an administrative agency will not be reversed unless it

---

**3.** The MDE concluded that the district's policy violated Minn.Stat. §§ 125A.03 and 125A.18 and 34 C.F.R. § 300.309. The viola-
tion of 34 C.F.R. § 300.309, however, was based on the MDE's interpretation of state law.

reflects an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence." *E.N.,* 620 N.W.2d at 68 (quotation omitted). "When an agency performs the quasi-judicial function of receiving and weighing evidence, making factual findings, and applying a prescribed standard to reach a conclusion, a reviewing court applies the 'substantial-evidence test.'" *Hurrle v. County of Sherburne ex rel. Bd. of Comm'rs,* 594 N.W.2d 246, 249 (Minn.App. 1999). Under the substantial-evidence test, the reviewing court "evaluate[s] the evidence relied upon by the agency in view of the entire record as submitted." *Cable Commc'ns Bd. v. Nor–West Cable Commc'ns P'ship,* 356 N.W.2d 658, 668 (Minn.1984). Substantial evidence is defined as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 464 (Minn.2002). If an agency engages in reasoned decision-making the reviewing court will affirm, even though it may have reached a conclusion different from the agency's conclusion. *Cable Commc'ns Bd.,* 356 N.W.2d at 669.

▆▆▆▆ "The right of due process, as effectuated by the concomitant right to a hearing in certain circumstances, was never intended to operate for the benefit of legislatively created bodies." *State ex rel. Indep. Sch. Dist. No. 276 v. Dep't of Educ.,* 256 N.W.2d 619, 625 (Minn.1977). Therefore, since Minnesota school districts do not have a right to due process, the process due to them is entirely statutory.

When investigating a matter, the MDE must "[r]eview all relevant information and make an independent determination as to whether the [school district] is violating a requirement of Part B of the [IDEA] or [the IDEA regulations]." 34 C.F.R. § 300.661(a)(3). The district claims that the MDE's decision is arbitrary, capricious, and not grounded in substantial evidence because the record does not indicate that any parents of private school students, other than complainant, sought ESY services from the district. Indeed, the record indicates that no other parents of private-school students requested ESY services during the 2005–06 school year. The MDE concluded that this "lack of requests is likely due to the District's stated position on ESY for non-public students and not to a lack of interest."

▆▆▆ Here, the MDE identified the district's policies based on the email from the district's special-education director to the complainant. The MDE concluded that the district's policies violated the law by "limit[ing] special instruction and services provided to all non-public school students residing in the District" and "unilaterally limit[ing] the ESY services available to all disabled non-public school students residing in the District." After finding such a violation, the MDE has authority to fashion the appropriate corrective action to address the violation. *See* 34 C.F.R. § 300.660(b)(2) (requiring the MDE to address the "[a]ppropriate future provision of services for all children with disabilities"). Moreover, the provision of ESY services is not predicated on a parent's request for such services. *See* 34 C.F.R. § 300.309(a)(2) (2006) ("Extended school year services must be provided only if a child's IEP team determines, on an individual basis ... that the services are necessary for the provision of FAPE to the child."). Thus, the MDE was not required to find that other nonpublic-school students sought, and were denied, ESY ser-

vices, before it could order corrective action.

## VI.

■ Lastly, the district argues that the MDE violated the IDEA by failing to comply with the 60–day decision deadline. The MDE is required to issue its final decision within 60 days after a complaint is filed, unless "exceptional circumstances exist with respect to a particular complaint." 34 C.F.R. §§ 300.661(a), (b)(1).

The original deadline for the final decision was September 19, 2006. The MDE provided notice to the parties on September 19, 2006, informing them that it was extending the deadline of issue its final decision due to the "systemic nature of complaint." The notice did not explain why the complaint was viewed as "systemic" or identify a new deadline. In a letter dated October 19, 2006, the district objected to the MDE's characterization of the complaint as "systemic," because only one parent had filed a complaint, the complaint involved only ESY services for nonpublic-school students, and the district was not aware of any way in which other students were affected.

The MDE contends that an extension of the deadline was necessary in this case because the complaint raised concerns about similarly situated students who were denied services; the district's application of the law, as explained in its response to the complaint, was contrary to the MDE's interpretation of state law; and the MDE had to fashion an appropriate remedy for students who may have been affected by the district's misapplication of the law. The MDE also points out that the district also requested a 10–day extension of its deadline in responding to the complaint. These factors were "exceptional circumstances" which permit an extension.

Furthermore, the district has not shown how, or even if, the district was harmed by the late decision. The complaint dealt with the provision of ESY services, most of which would seemingly be provided during the summer months, not the regular school year. Given the concerns raised about the provision of services for other students and the extension provided to the district, we conclude that the MDE's extension of the deadline was not arbitrary, capricious, or otherwise in violation of the law.

## DECISION

■ When the MDE receives a written complaint regarding a dispute over the provision of special education services, it has the general authority and responsibility to investigate the complaint, assess the local school district's policies raised therein, and, if necessary, order corrective action to address the provision of appropriate services to children with disabilities in the future.

■ Minn.Stat. § 125A.18 (2006) prohibits school districts from denying special education instruction and services to children with disabilities enrolled in nonpublic schools and entitles them to special instructions and services, including extended school year services.

■ States are free to impose additional requirements for special education services, beyond the minimum requirements specified by the federal IDEA, and the MDE has the authority to enforce state laws that exceed the minimum federal standards in its administrative complaint procedure.

In addition, we conclude that the MDE was not required to find that other nonpublic-school students sought, and were denied, ESY services, before it could order corrective action to be taken and that the deadline extension was not arbitrary, ca-

pricious, or otherwise in violation of the law.

**Affirmed.**