# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1601

_____

Special School District No. 1, Minneapolis Public Schools

*Plaintiff - Appellant*

v.

R.M.M., by and through her parents, O.M. and T.M.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 17, 2016
Filed: June 29, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and EBINGER,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

This case is about the provision of special education services to a young child attending a nonpublic school. Federal law grants this child neither an individual right to a free appropriate public education nor the right to dispute the provision of special

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa, sitting by designation.

education services in a due process hearing.  The question before us is whether Minnesota state law grants either of these rights.  After careful analysis, we determine that state law does grant these rights, and thus we affirm the district court.[2]

## I.

R.M.M. was a young student who voluntarily attended a Catholic private school in Minneapolis beginning in kindergarten.  She struggled in the classroom and received what support and instruction the private school could offer.  Finally, in the fifth grade, she received an evaluation from the Minneapolis Public Schools, Special School District No. 1 ("MPS").  The evaluation determined that R.M.M. needed special education instruction for reading, written expression, and math.  MPS proposed an individual service plan that would provide R.M.M. two 30-minute reading sessions per week and two 30-minute writing sessions per week.  The plan called for R.M.M. to be bussed twice per week from her private school during science class to a nearby public school for the reading and writing sessions, to be held back-to-back over the course of an hour.

R.M.M. enrolled in MPS part time in the spring of her fifth grade year.  But her parents grew dissatisfied with the quality of instruction and declined to send her again after four sessions.  Her private school later informed R.M.M.'s parents that it could no longer meet her educational needs and recommended that R.M.M. enroll in MPS as a full-time student.  She began her sixth grade year enrolled in MPS full time.

R.M.M.'s parents then filed a complaint with the Minnesota Department of Education ("MDE") and requested an impartial due process hearing.  The amended complaint stated a claim that MPS had denied R.M.M. a free appropriate public

---

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

education ("FAPE") while R.M.M. was enrolled at her private school.  MPS moved to dismiss the claim, but the Administrative Law Judge ("ALJ") denied the motion. Following a three-day due process hearing, the ALJ concluded that MPS had denied R.M.M. a FAPE.  MPS then filed a lawsuit in federal district court appealing the ALJ's decision.  MPS argued that the ALJ lacked jurisdiction over R.M.M.'s FAPE claims.  Each party filed motions over this issue.  R.M.M.'s parents moved to dismiss MPS's appeal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  MPS moved for Judgment on the Administrative Record under Rule 12(c), arguing that the ALJ lacked jurisdiction over the FAPE claim because private school students do not have an individual right to either a FAPE or a due process hearing.[3]

The district court granted the motion to dismiss and denied the motion for Judgment on the Administrative Record.  On the issue of R.M.M.'s right to a FAPE, the district court first analyzed federal law.  The court found that federal law did not grant the right to a FAPE to a private school student but did permit states to grant rights beyond the minimum requirements set out by federal law.  Turning to Minnesota state law, the court held that Minnesota granted private school students the right to a FAPE.  On the issue of a due process hearing, the court ruled in favor of R.M.M. and held that private school students in Minnesota are entitled to a due process hearing to dispute whether they have received a FAPE.  MPS now appeals.

II.

We review the district court's ultimate decision under a de novo standard.  See Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 611 (8th Cir. 1997).  Our duty is to interpret and apply the law, not to "substitute [our] own notions of sound educational

---

[3]Throughout this litigation each party has made claims, argued facts, and filed motions on issues not before us today.  For the sake of brevity, we recite only the facts and procedural history relevant to the two issues on appeal.

policy for those of the school authorities which [we] review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982). To determine whether state standards exceed minimum federal standards, we look to state law. See Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000). Because the Minnesota Supreme Court has not spoken on this issue, we may "consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data" to predict how that court would rule. PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust ex rel. BNC Nat'l Bank, 782 F.3d 976, 979 (8th Cir. 2015) (internal quotation marks omitted).

## A.

Congress enacted the Individuals with Disabilities Education Act ("IDEA") "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). Thus, IDEA created a substantive right to a FAPE for children with disabilities. See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 993 (2017). A FAPE is defined as

> special education and related services that—
> (A) have been provided at public expense under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

IDEA also establishes certain procedural safeguards for children with disabilities and their families. IDEA requires states to develop a "specialized course of instruction . . . for each disabled student, taking into account that child's capabilities." Gill, 217 F.3d at 1034 ("The services that a school district will provide to a child are to be summarized in a written statement called an individualized education program or IEP."). If "any party" is dissatisfied with the school district's proposed plan, then that party may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). And the child's parents "shall have an opportunity for an impartial due process hearing" to bring a complaint relating to the provision of a FAPE. Id. § 1415(f)(1)(A).

As just discussed, all children with disabilities attending public school have possessed a substantive right to a FAPE since the enactment of IDEA. But the rights afforded by IDEA to a child with disabilities attending private school have changed over time.

Prior to 1997, students with disabilities attending private schools possessed an individual right to special education and related services. See Foley v. Special Sch. Dist. of St. Louis Cnty., 153 F.3d 863, 864 (8th Cir. 1998); see also John T. v. Marion Indep. Sch. Dist., 173 F.3d 684, 690 (8th Cir. 1999) ("In implementing the IDEA, the Department of Education promulgated regulations requiring school districts to 'provide special education and related services designed to meet the needs of private school children with disabilities' residing in their jurisdictions." (quoting 34 C.F.R. § 300.452 (1996))). In other words, private school students had the right to a FAPE. Then, in 1997, Congress amended IDEA. "These amendments substantially limit[ed] the rights of disabled children enrolled by their parents in a private school." John T., 173 F.3d at 690. No longer do private school students have an individual right to special education and related services based on their needs. See 34 C.F.R.

§ 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."). Instead, private school students as a group now receive services based on proportionate-share funding. See 20 U.S.C. § 1412(a)(10)(A)(i)(I). And if the parents of a private school student take issue with the services provided by the school district, they have no access to an impartial due process hearing. 34 C.F.R. § 300.140(a)(1). Their only recourse is through the state complaint procedures. Id. § 300.140(c).

Federal law represents the minimum requirements for the education of children with disabilities. See Gill, 217 F.3d at 1035 (discussing the ability of states to set higher standards than those in IDEA). States remain free to impose additional requirements for special education services. Indep. Sch. Dist. No. 281 v. Minn. Dep't of Educ., 743 N.W.2d 315, 324 (Minn. Ct. App. 2008).

## B.

Minnesota has long guaranteed special education services for children with disabilities under state law. See Minn. Stat. § 120.17, subd. 1 (1959) ("Every district and unorganized territory shall provide special instruction and services for handicapped children of school age . . . ."). The statutory framework governing special education has been amended many times in the past 60 years. For example, shortly after Congress amended IDEA to limit the rights of private school students, the Minnesota legislature also amended its laws to limit the services offered to disabled children "to the extent required in federal law as of July 1, 1999." Id. § 120.17, subd. 1 (1998). But the following year, the legislature cut this limiting language and restored the provision to its previous form. See id. § 125A.03 (1999).

The state legislature has further amended Minnesota's special education laws to clarify the services owed to disabled children. In 2002, the legislature added

language defining "special instruction and services." "For purposes of state and federal special education laws, the phrase 'special instruction and services' in the state education code means a free and appropriate public education provided to an eligible child with disabilities . . . ." Id. § 125A.03 (2002). Then, in 2014, the legislature added language defining a FAPE. This language is materially identical to how IDEA defines a FAPE. Id. (2014). So current Minnesota state law demands that "every district must provide special instruction and services . . . for all children with a disability," defines "special instruction and services" as a FAPE, and uses the definition of FAPE found in IDEA. Id.

Minnesota law also discusses special education services for private school students. A short time after Congress passed the original IDEA statute, the Minnesota legislature added a new provision in state law stating that "no resident of a district who is eligible for special instruction and services . . . shall be denied provision of this instruction and service on a shared time basis because of attendance at a nonpublic school." Id. § 120.17, subd. 9 (1976). The language of this provision, known as the shared-time statute, remains largely the same today: "No resident of a district who is eligible for special instruction and services under this section may be denied instruction and service on a shared time basis[4] . . . because of attending a nonpublic school." Id. § 125A.18.

III.

The first issue before us is whether Minnesota state law goes beyond the minimum requirements of IDEA and entitles private school students the right to a FAPE. "When interpreting a statute, we must look first to the plain language of the

[4]"'Shared time pupils' . . . attend public school programs for part of the regular school day" and otherwise attend a nonpublic school. Minn. Stat. § 126C.01, subd. 8.

statute." Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 496 (Minn. 2009). "When a statute's language is plain, the sole function of the courts is to enforce the statute according to its terms." Engfer v. Gen. Dynamics Advanced Info. Sys., Inc., 869 N.W.2d 295, 300 (Minn. 2015). Our goal is to ascertain and effectuate the intent of the state legislature. Minn. Stat. § 645.16. "We determine legislative intent 'primarily from the language of the statute itself.'" Alpine Glass, Inc. v. Ill. Farmers Ins. Co., 643 F.3d 659, 664 (8th Cir. 2011) (quoting Brayton v. Pawlenty, 781 N.W.2d 357, 363 (Minn. 2010)). "We must presume that 'a legislature says in a statute what it means and means in a statute what it says.'" Engfer, 869 N.W.2d at 300 (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).

A.

A plain reading of Minnesota state law shows that private school students have a right to a FAPE. Section 125A.18 of the Minnesota Education Code requires that "[n]o resident of a district who is eligible for special instruction and services under this section may be denied instruction and service on a shared time basis . . . because of attending a nonpublic school." This section of the code does not define "special instruction and services," but another section does. Section 125A.03 defines "special instruction and services" as a FAPE. And the Minnesota Court of Appeals has previously held that "the general term 'instruction and service' is restricted in its meaning by the preceding particular term, 'special instruction and services.'" Indep. Sch. Dist. No. 281, 743 N.W.2d at 325.[5] Accordingly, section 125A.18 demands that no resident of a school district who is eligible for a FAPE be denied a FAPE on a

_____

[5]Minnesota statutory law dictated the court of appeals's holding. See Minn. Stat. § 645.08(3) ("[G]eneral words are construed to be restricted in their meaning by preceding particular words . . . .").

shared time basis because of attending a nonpublic school.[6]  In other words, because MPS deemed R.M.M. eligible for a FAPE, Minnesota law requires MPS to provide her a FAPE on a shared time basis.

The evolution of the language within the Minnesota Education Code over the last twenty years further demonstrates that the state legislature intended for private students to receive a FAPE.  In response to the 1997 amendments limiting the rights of private school students under IDEA, the Minnesota legislature added language limiting the services owed to disabled children "to the extent required in federal law as of July 1, 1999."  Minn. Stat. § 120.17, subd. 1 (1998).  So only those services required by IDEA were owed.  But, significantly, the state legislature later struck the limiting language.  See id. § 125A.03 (1999).  This act of the state legislature indicates an intent for Minnesota law to exceed minimum federal standards.  In fact, the same legislature, when updating state regulations governing special education, prescribed that state requirements exceeding federal ones "are deemed valid for the purposes of providing special instruction and services to" disabled children.[7]  Act of Apr. 30, 1999, ch. 123 § 20.  Furthermore, the 2002 and 2004 amendments, clarifying that special instruction and services constitute a FAPE as defined under federal law, occurred *after* Congress amended IDEA to limit the rights of private school students.

_____

[6]Any objection that section 125A.18 never expressly uses the term FAPE in defining the rights of private schools students is specious.  Federal law frequently speaks, not of a free appropriate public education, but rather of the special instruction and services owed to disabled children.  See, e.g., 20 U.S.C. §§ 1400(d)(1)(A), 1411(a)(1).  Any mention of the special instruction and services owed under federal law necessarily implies a FAPE because that is how federal law defines FAPE.  See id. § 1401(9).

[7]The MDE has issued guidance to special education directors explicating that "Minnesota law exceeds federal requirements for services to a student with a disability who is placed by parents in a nonpublic school."  Appellee's Add. 12 (citing Minn. Stat. § 125A.18).

Cf. Gill, 217 F.3d at 1036 (declining to hold that Missouri standards, enacted before the passage of IDEA, exceeded federal ones when the Missouri legislature had not subsequently amended the applicable statutes).

A comparison of language used in Minnesota law with language in IDEA also reveals that the Minnesota legislature intended to provide private students the right to a FAPE. IDEA limits the obligations a state owes to disabled children enrolled in private schools. All IDEA requires is that "[a]mounts to be expended for the provision of [special education] services . . . be equal to a proportionate amount of Federal funds made available under this subchapter." 20 U.S.C. § 1412(a)(10)(A)(i)(I); see also Foley, 153 F.3d at 865 ("States are required only to spend proportionate amounts on special education services for this class of students as a whole."). Simply put, under federal law disabled children enrolled in private schools are entitled, as a group, to a proportionate share of funds only, without any individual entitlement to the provision of special education services. This stands in sharp contrast to Minnesota law, which does not discuss proportionality. Nor does Minnesota law focus on the funding owed to private school students as a group. Instead, Minnesota law speaks directly to the special instruction and services owed to private school students. Minn. Stat. § 125A.18. Those services cannot be denied to any individual student because he or she attends private school. Id.

B.

Minnesota case law concurs with our interpretation of section 125A.18. See Indep. Sch. Dist. No. 281, 743 N.W.2d at 325. In Independent School District No. 281, the school district offered summer services for students with disabilities to public school students but not to students attending nonpublic schools. Id. at 320. The parent of a nonpublic school student filed a complaint with the MDE, which then found that the school district's policy violated state law—sections 125A.03 and 125A.18. Id. The district appealed, and the Minnesota Court of Appeals agreed with

-10-

the MDE. The court focused primarily on the shared time statute. The shared time statute, under the district's argument, did not require the district to provide special instruction and services to nonpublic school students. Id. at 325. The court rejected this argument and concluded that "Minn. Stat. § 125A.18 is unambiguous and prohibits school districts from denying special education instruction and services to children with disabilities enrolled in nonpublic schools." Id. And because Minnesota Statute section 125A.03 equates "special instruction and services" with a FAPE, we read Independent School District No. 281's holding to prohibit districts from denying a FAPE to disabled children enrolled in nonpublic schools.

MPS counters that Independent School District No. 281 is not dispositive on the issue before us. Rather, Independent School District No. 281 was a case, according to MPS, where a school district had denied all special instruction and services to all private school students. MPS acknowledges such an action by a school district contravenes the language of Minnesota Statute section 125A.18. But, continues MPS, that is not the case here. MPS has offered R.M.M. instruction and services; R.M.M. has simply refused to use those services.

Though we agree that Independent School District No. 281 is not dispositive, the court's broad holding lends ample support to our interpretation of Minnesota law. MPS is correct that Independent School District No. 281 is not on all fours with this case. For one thing, the complaint in that case went through the state complaint procedure, not a due process hearing. Id. at 320. But these differences are not material to the issue at hand. The court of appeals issued a broad holding—school districts cannot deny special instruction and services to disabled students attending nonpublic schools. Id. at 325. The Minnesota state court, analyzing a Minnesota state law, could have issued a narrower holding tied more closely to the facts at hand. But it did not. And because state law defines special instruction and services as a FAPE, the holding of Independent School District No. 281 can and should be read to require districts to provide a FAPE to nonpublic school students.

-11-

C.

In response to the district court's adverse ruling, MPS raises three more arguments for why Minnesota law does not provide R.M.M. the right to a FAPE. First, MPS suggests that Minnesota law requires only that public schools make a FAPE *available* to private school students. Alleging that Minnesota law parallels federal law, MPS asserts that both statutes require merely that special education services "must be available" to all children with disabilities.

Yet the plain language of state law belies MPS's assertion. Section 125A.03 of Minnesota's Education Code expressly states that "every district must provide special instruction and services" to disabled children. Likewise, the definition of FAPE used in both state and federal law twice states that services must be *provided* to disabled children. See 20 U.S.C. § 1401(9)(A) & (D); Minn. Stat. § 125A.03(a)(2) & (4).

Second, MPS argues that a FAPE is more than special instruction and services, and therefore it is incorrect to read Minnesota law as granting private school students a right to a FAPE. MPS points out that both federal and state definitions of a FAPE include "an appropriate preschool, elementary school, or secondary school education in the State involved." 20 U.S.C. § 1401(9); Minn. Stat. § 125A.03(a)(3). MPS then speculates that the public school district would have to monitor the private school's general education offering to guarantee that the disabled student is receiving a FAPE. For support of this proposition, MPS relies on a Fourth Circuit case analyzing the requirements of Section 504 of the Rehabilitation Act. See D.L. v. Balt. City Bd. of Sch. Comm'rs, 706 F.3d 256, 261 (4th Cir. 2013) (commenting on the "practical and programmatic challenges associated" with requiring public schools to provide a FAPE to private school students under Section 504).

-12-

But MPS's argument fails because, once again, it runs contrary to the plain language of Minnesota state law. Section 125A.03 clearly states, "the phrase 'special instruction and services' in the state Education Code means a free appropriate public education provided to an eligible child with disabilities." This language refutes the argument that a FAPE is something more or different than special instruction and services. The out-of-circuit D.L. decision, analyzing a different section of federal law, offers no help to MPS over the issue of Minnesota law. Even if we were to consider the "practical and programmatic challenges" of providing a FAPE to private school students, the shared time statute has already done so. Section 125A.18 requires school districts to provide a FAPE *on a shared time basis* to disabled children attending private school. The statute does not require public school districts to constantly monitor the education offered at private schools. Instead, the district must provide the appropriate services for part of the regular school day while the student attends the private school for the rest of the day. See Minn. Stat. §§ 125A.18, 126C.01, subd. 8.

Third, MPS contends that Eighth Circuit precedent stands opposed to our holding. In a long section of its brief, MPS recites the facts and holdings of three prior cases—John T., Peter, and Foley. Each of these cases analyzed the effect of the 1997 amendments to IDEA and determined that private school students had no individual right to a FAPE. See John T., 173 F.3d at 691; Peter v. Wedl, 155 F.3d 992, 998 (8th Cir. 1998); Foley, 153 F.3d at 865. The Peter court, MPS continues, examined Minnesota state law after the 1997 amendments to IDEA and ultimately held that the student no longer had an individual right to a FAPE. 155 F.3d at 998.

Because neither Peter nor any other Eighth Circuit opinion has analyzed the particular Minnesota statutes at issue here, however, no circuit precedent contradicts our holding. The John T. court (Iowa) and Foley court (Missouri) analyzed claims brought under IDEA from different states. And even though Peter arose in Minnesota, the court's analysis of the claim brought under IDEA rested solely on

-13-

federal law. Id. at 998-1001. The only discussion of state law revolved around the student's separate equal protection claim. Id. at 996-98. We have discovered no other case—and the parties have failed to offer any—that analyzes these state statutes and comes to a contrary holding.

IV.

The second issue raised on appeal is whether R.M.M. has the right to bring her claim through the impartial due process hearing. Even though R.M.M. has the right to a FAPE, we must determine whether the ALJ had jurisdiction to hear her claims. MPS says no—private school students have no right to an impartial due process hearing. First, MPS directs our attention back to the language of Minnesota Statute section 125A.18 ("Parties serving students on a shared time basis have access to the due process hearing system . . . ."). The district court, in its opinion, concluded that this statutory provision made the impartial due process hearing available to R.M.M. and her parents. But "parties serving students," MPS submits, does not include a student's parents. MPS relies on a MDE memorandum in which the department opined that "parties serving students" are public school districts themselves. Appellee's Add. 16. This language, therefore, permits public school districts to bring a claim if "FAPE is impeded by the nonpublic school, or its staff." Id. Second, MPS submits that the MDE has stated for years that federal regulations, which prohibit private school students from challenging the provision of special education services in a due process hearing, still apply in Minnesota. Id. at 14.

MPS's argument falters when confronted by the plain language of Minnesota law. MPS is correct that administrative interpretations may be considered when discerning the intent of the legislature. See Minn. Stat. § 645.16(8). But "[w]hen a statute's language is plain, the sole function of the courts is to enforce the statute according to its terms." Engfer, 869 N.W.2d at 300. Minnesota law clearly states that "[a] parent . . . is entitled to an impartial due process hearing . . . when a dispute arises

-14-

over . . . the provision of a free appropriate public education to a child with a disability." Minn. Stat. § 125A.091, subd. 12. The parents of R.M.M. dispute the provision of a FAPE offered by MPS to their daughter. To that end, they are entitled to an impartial due process hearing under state law.

Federal law also provides R.M.M. and her parents access to an impartial due process hearing. Admittedly, under IDEA, due process hearings are not available for complaints from private school students about the inadequacy of the proportional funding of services or the provision of specific services to such students. See 34 C.F.R. § 300.140(a)(1). But R.M.M. does not challenge the inadequacy of proportional funding; she challenges MPS's provision of a FAPE. Federal law offers an impartial due process hearing to settle this dispute. 20 U.S.C. § 1415(b)(6)(A). The fact that state law, and not federal law, grants R.M.M. an individual right to a FAPE is immaterial. See Gill, 217 F.3d at 1035 ("If state legislation implementing IDEA creates a higher standard than the federal minimum, an individual may bring an action under the federal statute seeking to enforce the state standard."). "When a state provides for educational benefits exceeding the minimum federal standards . . . the state standards are thus enforceable through the IDEA." See Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 658 (8th Cir. 1999). We therefore hold that R.M.M. and her parents have a right, under both state and federal law, to an impartial due process hearing to dispute the provision of a FAPE by MPS.

V.

This case touches upon important questions regarding the needs of children with disabilities like R.M.M., the duties school districts like MPS owe these children, and the education policies chosen by governments at the state and federal level. But ultimately, this is a case about statutory interpretation. And the plain language of Minnesota law grants both the right to a FAPE and the right to an impartial due process hearing to children with disabilities attending nonpublic schools. For the reasons discussed herein, we affirm the district court.

_____